MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
YUAN (GRACE) ZHONG (S.B. #318808)
yzhong@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ABBY F. RUDZIN *(pro hac vice forthcoming)*
arudzin@omm.com
MOSHE MANDEL *(pro hac vice forthcoming)*
mmandel@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendants J2 Global, Inc., Vivek Shah, Nehemia Zucker, and R. Scott Turicchi*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY GARCIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J2 GLOBAL, INC., VIVEK SHAH, NEHEMIA ZUCKER, and R. SCOTT TURICCHI,<br><br>Defendants. | Case No. 2:20-cv-06096-SB-MAA<br><br>**NOTICE OF INCORPORATION BY REFERENCE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>**[Notice of Motion and Motion; Memorandum of Points and Authorities; Declaration of Matthew W. Close; and [Proposed] Order Filed Concurrently]**<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br>Hearing Date: February 26, 2021<br>Hearing Time: 8:30 a.m.<br>Courtroom: 6C |

## I. INTRODUCTION

Defendants J2 Global, Inc., Vivek Shah, Nehemia Zucker, and R. Scott Turicchi hereby request that this Court consider documents referenced in Jonathan Espy's consolidated class action complaint (the "Complaint," Dkt. No. 42) under the incorporation by reference doctrine and otherwise take judicial notice under Rule 201 of the Federal Rules of Evidence of the publicly available documents attached to the accompanying Declaration of Matthew W. Close (cited as "Close Decl."). These documents are Exhibits 1 through 25 to the Close Declaration. This request is made in support of Defendants' Motion to Dismiss.

## II. LEGAL GROUNDS FOR DEFENDANTS' REQUEST

When deciding a motion to dismiss in a securities case, the Supreme Court has held that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[1] District courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). These documents include U.S. Securities and Exchange Commission ("SEC") filings, publicly available press releases, articles, and other public webpages on which the complaint relies. *See, e.g.*, *Waterford Twp. Police and Fire Ret. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143–44 (C.D. Cal. 2018) (taking judicial notice of SEC filings beyond those incorporated by reference in complaint); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 987–88 (N.D. Cal. 2017) (finding incorporated by reference slide decks presented during earnings

---

[1] Unless otherwise noted, original alterations, internal citations, and quotation marks in quoted passages are omitted, and emphasis is added.

calls, 10-Qs, 10-Ks, and proxy statements); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants."); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005) (taking judicial notice of two webpages on Amazon.com); *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of various pages on the Warhol Museum's internet site); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. 2015) (holding that webpages available on the Internet Archive's Wayback Machine are subject to judicial notice). The Court may take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Ritchie*, 342 F.3d at 908–09 (citing Fed. R. Evid. 201(b)).

### A. The Court should consider SEC filings, press releases, and public webpages that are referenced in the Complaint or form the basis of Espy's claims.

On a motion to dismiss, courts may "consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds, S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). Incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. Even a single reference suffices for the purpose of incorporation by reference if the referenced document "forms the basis of the plaintiff's claim." *Id*. A court may also consider documents to be incorporated by reference if the "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its

motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. Consideration of the full text of documents incorporated by reference, "including portions which were not mentioned in the complaint," "is appropriate in the context of a motion to dismiss." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). And courts routinely consider such documents in evaluating whether a complaint satisfies the PSLRA. *See In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 863 (N.D. Cal. 2004) ("[C]ourts are specifically authorized, in connection with a motion to dismiss a securities fraud complaint, to consider documents and filings described in the complaint under the incorporation by reference doctrine.").

Exhibits 1, 2, 4 through 8, and 10 through 19 are incorporated by reference in the Complaint. Espy's claims are based on these SEC filings, press releases, webpages, and other publicly available information about or relating to J2 from October 2015 through June 2020. (*See, e.g.*, Compl. at 1 (stating that Espy's claims are based on a review of SEC filings and press releases issued by J2, and other publicly available information about J2). Under the incorporation by reference doctrine, the Court should consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [] pleading" because Espy may not selectively omit portions of cited documents in an effort to save his claims. *See Knievel*, 393 F.3d at 1076. Accordingly, Defendants request that the Court consider the following documents:

1. **Exhibit 1**: MAI Systems Corp.'s Information Statement Schedule 14(c) filed with the SEC on March 18, 2005. The Complaint discusses and quotes

the filing at paragraphs 76, 78, and 79, and it appears to form the basis of Espy's claims regarding the independence of J2's Board. (Compl. ¶¶ 76, 78, 79.)

2. **Exhibit 2**: J2's Form 8-K and press release filed with the SEC on October 5, 2015. The Complaint discusses and quotes the press release at paragraphs 6, 60, and 111, and it appears to form the basis of Espy's claims regarding J2's acquisition of VDW Netherlands. (*Id*. ¶¶ 6, 60, 111–12; App. C.)

3. **Exhibit 4**: Citron Research Internet Post titled "Citron Exposes the Dirty Secrets of j2 Global (JCOM)! Targets: $40 Near Term, $27 within One Year, Single Digits Long Term," (March 10, 2016), available at https://citronresearch.com/citron-exposes-the-dirty-secrets-of-j2-global-jcom/ (last visited December 16, 2020). The Complaint extensively discusses and quotes the post at paragraphs 13 and 257. In addition, the Complaint relies on the post as an alleged corrective disclosure, making it a basis for Espy's claims. (*Id*. ¶¶ 13–14, 257–58.)

4. **Exhibit 5**: J2 Global Ireland Limited Director's Report and Financial Statements For the Year Ended 31 December 2015 ("J2 Ireland's 2015 Financial Statements"). The Complaint discusses J2 Global Ireland Limited's financial results taken from J2 Ireland's 2015 Financial Statements at paragraphs 10 and 93,[2] and it appears to form the basis of Espy's allegations regarding J2's goodwill impairment practices. (*Id*. ¶¶ 10, 93.)

5. **Exhibit 6**: J2's Annual Report on Form 10-K filed with the SEC on March 1, 2017 (the "2016 10-K"). The Complaint discusses and quotes the 2016 10-K at paragraphs 152, 154, 156, and 158. In addition, the Complaint asserts that the 2016 10-K contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding J2's goodwill impairment practices. (*Id*. ¶¶ 152–60; App. C.)

---

[2] The complaint does not directly cite J2 Ireland's 2015 Financial Statements; rather, it cites and relies on the Hindenburg Post, which in turn cites and quotes the financial statements. (*See* Compl. ¶ 10.)

6.     **Exhibit 7**: J2's Form 8-K filed with the SEC on September 28, 2017, and September 28, 2017 press release titled "j2 Global Announces Vivek Shah to Become Chief Executive Officer in January 2018 Hemi Zucker to Become Co-Managing Principal of OCV Management ("OCV") with j2 Global Becoming an OCV Limited Partner," attached as exhibit 99.1 to the Form 8-K. The Complaint discusses and quotes the press release at paragraph 73, and it appears to form the basis of Espy's claims regarding related-party transactions. (*Id.* ¶ 73.)

7.     **Exhibit 8**: Excerpt from OCV Management, LLC's ("OCV") webpage regarding its "team" as it appeared on December 5, 2017, available via the Internet Archive's Wayback Machine at http://web.archive.org/web/20171205173159/http://ocvpartners.com/team/ (last visited December 16, 2020). The Complaint discusses the same webpage as it appeared on November 18, 2020, at paragraph 69, and it appears to form the basis of Espy's claims regarding the independence of J2's Board. (*Id.* ¶ 69.)

8.     **Exhibit 10**: J2's Annual Report on Form 10-K filed with the SEC on March 1, 2018 (the "2017 10-K"). The Complaint discusses and quotes the 2017 10-K at paragraphs 197, 199, 201, and 203. In addition, the Complaint asserts that the 2017 10-K contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding J2's goodwill impairment practices. (*Id.* ¶¶ 197–205; App. C.)

9.     **Exhibit 11**: J2's Schedule 14A filed with the SEC on March 23, 2018 (the "2018 Proxy Statement"). The Complaint discusses and quotes the 2018 Proxy Statement at paragraphs 204 and 206. In addition, the Complaint asserts that the 2018 Proxy Statement contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding related-party transactions and the independence of J2's Board. (*Id.* ¶¶ 204–07; App. C.)

10.    **Exhibit 12**: J2's Annual Report on Form 10-K filed with the SEC on March 1, 2019 (the "2018 10-K"). The Complaint discusses and quotes the 2018

10-K at paragraphs 224, 226, 228, and 230. In addition, the Complaint asserts that the 2018 10-K contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding J2's goodwill impairment practices. (*Id*. ¶¶ 224–32; App. C.)

11. **Exhibit 13**: J2's Schedule 14A filed with the SEC on March 22, 2019 (the "2019 Proxy Statement"). The Complaint discusses and quotes the 2019 Proxy Statement at paragraphs 231 and 233. In addition, the Complaint asserts that the 2019 Proxy Statement contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding related-party transactions and the independence of J2's Board. (*Id*. ¶¶ 231–34; App. C.)

12. **Exhibit 14**: J2's Annual Report on Form 10-K filed with the SEC on March 2, 2020 (the "2019 10-K"). The Complaint discusses and quotes the 2019 10-K at paragraphs 7, 75, 80, 245, 247, 249, and 251. In addition, the Complaint asserts that the 2019 10-K contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding J2's financial reporting practices and related-party transactions. (*Id*. ¶¶ 245–53; App. C.)

13. **Exhibit 15**: J2's Global Analyst Day Presentation, dated March 4, 2020, available at https://www.j2global.com/general/j2-global-analyst-day-2020/ (last visited December 16, 2020). The Complaint discusses revenue information regarding J2 acquisition Everyday Health taken from the Global Analyst Day Presentation at paragraphs 11, 12, and 99 through 102,[3] and it appears to form the basis of Espy's allegations regarding J2's goodwill impairment and consolidated accounting practices. (*Id*. ¶¶ 11–12, 99–102.)

14. **Exhibit 16**: J2's Schedule 14A filed with the SEC on March 26, 2020 (the "2020 Proxy Statement"). The Complaint discusses and quotes the 2020 Proxy Statement at paragraphs 252 and 254. In addition, the Complaint asserts that the

---

[3] The Complaint does not directly cite the J2's Global Analyst Day Presentation; rather, it cites and relies on the Hindenburg Post, which in turn cites the Investor Day Presentation. (Compl. ¶¶ 11, 15.)

2020 Proxy Statement contained allegedly false or misleading statements that appear to form the basis of Espy's allegations regarding related-party transactions and the independence of J2's Board. (*Id*. ¶¶ 252–55; App. C.)

15. **Exhibit 17**: Hindenburg Research internet post titled "J2 Global: Troubling Related Party Transactions, Looming Impairments and a Suspicious History of Insider Enrichment Spanning Decades," (June 30, 2020) ("Hindenburg Post"), available at https://hindenburgresearch.com/j2-global/ (last visited December 16, 2020). The Complaint extensively discusses and quotes the post at paragraphs 10, 15, 60, and 260 through 263. In addition, the Complaint relies on the post as an alleged corrective disclosure, making it a basis for Espy's claims. (*Id*. ¶¶ 15–16, 260–64.)

16. **Exhibit 18**: J2's Form 8-K filed with the SEC on July 6, 2020, and June 30, 2020 press release titled "J2 Global Responds to False Claims and Distortions in Short-Seller," attached as exhibit 99.1 to the Form 8-K. The Complaint discusses and quotes the press release at paragraphs 61 and 64, and it appears to form the basis of Espy's claims regarding related-party transactions. (*Id*. ¶¶ 61, 64.)

17. **Exhibit 19**: Excerpt from OCV's webpage regarding its "portfolio," available at http://ocvpartners.com/portfolio/ (last visited December 16, 2020). The Complaint discusses and quotes the webpage at paragraph 85, and it appears to form the basis of Espy's claims regarding the independence of J2's Board. (*Id*. ¶ 85.)

### B. The Court may also take judicial notice of SEC filings, press releases, stock price history, and public webpages.

When considering a motion to dismiss a securities class action, courts also routinely take judicial notice of public filings made with the SEC, press releases, stock price history, and webpages. Indeed, in "deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), a court may look beyond the plaintiff's complaint to

matters of public record." *AB Inv. LLC v. Regal One Corp.*, 2009 WL 10675242, at *2 n.2 (C.D. Cal. Sept. 9, 2009); *accord Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (finding judicial notice of reported stock price history and SEC filings "proper"); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (holding that courts "may consider . . . any matter subject to judicial notice, such as SEC filings."); *Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at *6 (S.D. Cal. July 12, 2016) ("In securities cases, courts routinely take judicial notice of SEC filings, press releases, and other publicly available financial documents."); *In re Openwave Sys. Inc. S'holder Deriv. Litig.*, 503 F. Supp. 2d 1341, 1349 (N.D. Cal. 2007) (collecting securities cases finding judicial notice of public filings proper); *Metzler* at 540 F.3d at 1064 n.7 (finding judicial notice of reported stock price history and SEC filings "proper"); *Wible*, 375 F. Supp. 2d at 965 (taking judicial notice of two webpages on Amazon.com).

The Court may take judicial notice of Exhibits 1, 2, 4 through 8, and 10 through 19 described above because they are matters of public record and are "not subject to reasonable dispute because [the facts] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

The Court also may take judicial notice of Exhibits 3, 9, and 20 through 25, described below, for the same reason:

1. **Exhibit 3**: J2's Form 10-Q filed with the SEC on November 9, 2015.
2. **Exhibit 9**: Exhibit 10.9 to J2's 2017 10-K titled "OCV Fund I, L.P. Second Amendment and Restated Limited Partnership Agreement," dated January 19, 2018, filed with the SEC on March 1, 2018.
3. **Exhibit 20**: A compilation of three publicly available press releases reporting that Nehemia Zucker has been added to the Boards of Directors of three

companies in which OCV invested: (i) a press release titled "OCV Partners Co-leads By Heart's $70M Series a Financing Ahead of First Product Launch in 2021" (April 14, 2020), available at http://ocvpartners.com/news-item/ocv-partners-co-leads-by-hearts-70m-series-a-financing-ahead-of-first-product-launch-in-2021/ (last visited December 14, 2020); (ii) a press release titled "Safe Breach Raises $19 Million to Expand Channels, Accelerate Product Development," (September, 29, 2020), available at http://www.ocvpartners.com/news-item/safebreach-raises-19-million-to-expand-channels-accelerate-product-development/ (last visited December 14, 2020); and (iii) a press release titled "Social Native appoints Hemi Zucker as first Independent Board Member" (March, 4, 2019), available at https://marcommnews.com/social-native-appoints-hemi-zucker-as-first-independent-board-member/ (last visited December 14, 2020).

4. **Exhibit 21**: A compilation of the following webpages indicating the members of the Boards of Directors of five OCV investments: (i) ByHeart's webpage listing its members of the Board of Directors, available at https://byheart.com/ (last visited December 14, 2020); (ii) Safe Breach's webpage listing its members of the Board of Directors, available at https://safebreach.com/team (last visited December 14, 2020); (iii) TechStyle Fashion Group's Company Profile listing its current Board Members, available at https://pitchbook.com/profiles/company/52833-61 (last visited December 14, 2020); (iv) Social Native's Company Profile listing its current Board Members, available at https://pitchbook.com/profiles/company/163075-60 (last visited December 14, 2020); and (v) Red Carpet's Company Profile listing its current Board Members, available at https://pitchbook.com/profiles/company/336547-90 (last visited December 14, 2020).

5. **Exhibit 22**: Yahoo Finance stock chart showing J2's stock price as of December 14, 2020, available at https://finance.yahoo.com/quote/JCOM/ (last visited December 14, 2020).

6. **Exhibit 23**: A compilation of the following Reuters articles regarding Andrew Left, founder of Citron Research: (i) "Citron's Left hits nerve with new Valeant broadside" (October 21, 2015), available at https://www.reuters.com/article/us-valeant-citron-left-idUSKCN0SF2K020151021 (last visited December 16, 2020); and (ii) "Short seller Andrew Left loses appeal against Hong Kong market ban" (February 26, 2019), available at https://www.reuters.com/article/us-hongkong-court-citron-idUSKCN1QF1P0 (last visited December 16, 2020).

7. **Exhibit 24**: Financial Account Standards Board's Accounting Standards Codification Topic 350 on Intangibles—Goodwill and Other (Update May 2019), Section 350-20-20.

8. **Exhibit 25**: Financial Account Standards Board's Accounting Standards Codification Topic 810 on Consolidation (Update February 2015), Section 810-10-10-1.

### III. CONCLUSION

The Court should therefore grant Defendants' request for consideration under the incorporation by reference doctrine and/or judicial notice of Exhibits 1 through 25, which are SEC filings, press releases, stock price history, and webpages that are (1) referenced in or form the basis of Espy's Complaint, and/or (2) are regularly noticed in considering motions to dismiss these type of actions.

Dated: December 17, 2020                O'MELVENY & MYERS LLP

                                        By: /s/ Matthew W. Close
                                            Matthew W. Close

                                        *Attorney for Defendants J2 Global, Inc., Vivek Shah, Nehemia Zucker, and R. Scott Turicchi*