UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

| Present: The Honorable | FERNANDO L. AENLLE-ROCHA<br>UNITED STATES DISTRICT JUDGE |
|---|---|

| V.R. Vallery | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceeding:       (IN CHAMBERS) ORDER GRANTING MOTION TO DISMISS [DKT. 43]**

## I.     Ruling

Before the court are J2 Global, Inc. ("J2"), Vivek Shah ("Shah"), Nehemia Zucker ("Zucker"), and R. Scott Turicchi's ("Turicchi") (collectively, "Defendants") Motion to Dismiss Consolidated Class Action Complaint (Dkt. 43-1) and Notice of Incorporation by Reference and Request for Judicial Notice ("RJN") (Dkt. 43-2), Lead Plaintiff Jonathan Espy's ("Espy" or "Plaintiff") Opposition to Defendants' Motion to Dismiss (Dkt. 49), and Defendants' Reply in Support of Motion to Dismiss (Dkt. 52).   The court found this matter appropriate for resolution without oral argument and vacated the hearing set for February 26, 2021.   *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons set forth below, the court GRANTS in part and DENIES in part Defendants' Notice of Incorporation by Reference and Request for Judicial Notice and GRANTS Defendants' Motion to Dismiss with 30 days' leave to amend.

## II.     Background

On July 8, 2020, Jeffrey Garcia filed this putative class action lawsuit for violation of federal securities laws against Defendants J2, Vivek R. Shah, Nehemia Zucker, and R. Scott Turicchi.   Dkt. 1.   On October 13, 2020, the court appointed Jonathan Espy as Lead Plaintiff.   Dkt. 28.   Plaintiff filed the operative Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Consolidated Complaint") on November 19, 2020 on behalf of a class consisting of all persons or entities who purchased or acquired the securities of J2 from October 5, 2015 through June 29, 2020 (the "Class Period").   Dkt. 42 ("Consol. Compl.").   As described in detail below, Plaintiff alleges Defendants made false and misleading statements or failed to disclose that: (1) J2 engaged in transactions with related parties; (2) a material number of acquisitions were made by an employee with a questionable incentive package; (3) J2's accounting methods obfuscated the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

underperformance of acquisitions; and (4) J2 lacked a disinterested Board of Directors.

The following facts are from the Consolidated Complaint, which the court must assume are true for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).

### A.    J2's Activities

J2 is an Internet information and services company that has a portfolio of brands in two divisions: Digital Media and Cloud Services.   Consol. Compl. ¶ 2.   It is an active acquirer of businesses in media, technology, and Internet Services, spending approximately $3 billion of acquisition capital to acquire 186 businesses since its founding in 1995.   *Id.* Defendant Shah has served as J2's CEO since January 2018, and before that, was the CEO of J2's digital media business.   *Id.* ¶ 25.   Defendant Zucker co-founded J2, served in various management roles, and was J2's CEO from May 2008 until December 2017.   *Id.* ¶ 26.   Defendant Turicchi has served as J2's President and CFO since August 2014.   *Id.* ¶ 27.   Plaintiff contends Defendants misrepresented or concealed material facts regarding four subjects in violation of the federal securities laws during the Class Period.

#### 1.  Related-Party Transactions

Plaintiff points to two investments during the Class Period that allegedly enriched J2 insiders and were not properly disclosed to investors.   *Id.* ¶¶ 60-87.

***J2's Acquisition of VDW (Netherlands).***   On October 5, 2015, J2 announced in a press release that it had acquired the intellectual property of VDW (Netherlands) ("VDW") along with several other businesses.   *Id.* ¶ 60.   But J2 did not disclose in the press release or its Form 10-K for fiscal year 2015 that it paid $900,000 for the acquisition, or that the acquisition was of an 11-month-old consulting business registered to the personal residence of Jeroen van der Weijden ("van der Weijden"), who had connections to J2.   *Id.* ¶¶ 61-62. Van der Weijden had set up his consulting company six months after becoming a director of a J2 subsidiary, which did not have any other employees.   *Id.* ¶ 66.   He then sold his company to J2 while still working as a J2 director.   *Id.*   VDW was dissolved in October 2019, shortly after van der Weijden left J2.   *Id.* ¶ 62.

***J2's Investment in OCV Fund I, LP.***   In September 2017, J2's Board of Directors and audit committee authorized the use of shareholder funds to invest $200 million in the investment fund OCV Fund I, LP ("the Fund").   *Id.* ¶ 71.   Richard Ressler, the Board's Chairman, is the majority equity holder of the Fund's General Partner, OCV I GP, LLC ("OCV I GP").   *Id.* ¶ 69.   Ressler is also the majority equity holder of the Fund's manager, OCV Management, LLC ("OCV"), and the founder and President of Orchard Capital Corp. ("Orchard Capital"), which uses OCV to oversee companies in which Orchard Capital or its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

affiliates invest. *Id.* ¶¶ 69-70. Three days after J2 invested in the fund, J2 named Defendant Shah as the CEO of J2. *Id.* ¶ 73. Shah received a total compensation of more than $45 million as a result of his promotion to CEO. *Id.* ¶ 73. On the same day J2 announced Shah's promotion, J2 also announced Defendant Zucker would join OCV as a co-managing principal. *Id.* ¶ 73. Zohar Loshitzer ("Loshitzer"), J2's Executive Vice President of Corporate Strategy, is also a principal of OCV. *Id.* ¶ 72.

J2 disclosed the $200 million investment in the Fund, that Chairman Ressler was "indirectly the majority equity holder" of OCV and general partner of the Fund, and that Zucker was a "co-managing principal of OCV and a significant equity holder." *Id.* ¶¶ 71, 206. J2, however, allegedly failed to disclose material facts pertaining to J2's business, operational, and financial results, including that OCV had a sparse and poor track record of investing in companies involving related parties, such as Defendant Zucker, Board members, and corporate insiders. *Id.* ¶¶ 82-85, 207. "There was no business justification" for the investment in the Fund, which served to enrich J2 insiders. *Id.* ¶ 81.

J2 has paid OCV, the principals of whom include Defendant Zucker, Ressler, and Loshitzer, over $65 million in management fees across 2018 and 2019. *Id.* ¶ 75. J2 disclosed it was paying fees to OVC in its proxy statements, but J2 did not adequately convey J2 was paying millions of dollars to J2's leaders through these fees. *Id.* ¶¶ 86, 207.

Certain members of the Board's audit committee that approved J2's $200 million investment in OCV Fund I in 2017 also had overlapping business relationships with each other and Board Chairman Richard Ressler that were not disclosed to investors. *Id.* ¶¶ 76-79. For example, audit committee Chairman Brian Kretzmer's ("Kretzmer") firm consulted for Orchard Capital, which Ressler founded, between 2016 and 2017. *Id.* ¶¶ 70, 77. Kretzmer became an independent director in February 2018 for CIM Real Estate Finance Trust Inc. ("CIM Real Estate"), a company founded by Ressler, months after approving the investment in the Fund. *Id.* ¶ 77. Kretzmer also was the CEO of MAI Systems Corporation ("MAI") from 1999 through 2006, while Ressler was Chairman, and Loshitzer and audit committee member Stephen Ross ("Ross") were directors. *Id.* ¶ 78. Further, Ross's son was employed at CIM Group, Inc. ("CIM Group"), another company co-founded by Ressler, and his son was promoted after Ross approved a reverse stock split deal "which explicitly benefited Ressler" at MAI. *Id.* ¶ 79. CIM Group manages CIM Commercial Trust Corp. ("CMCT"), where Ressler is the Chairman and two J2 directors (Douglas Bech and Robert Cresci) are also directors. *Id.*

In sum, Plaintiff maintains J2's investment in the Fund was approved by interested parties and benefitted Defendant Zucker, Ressler, and Loshitzer through the millions of dollars in management fees J2 has paid, as well as the continued funding of their personal business ventures. *Id.* ¶ 86.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

2. *Statements of Former Employee and van der Weijden's Alleged Incentive Package*

A former J2 employee, who was Managing Director, Australia & New Zealand from 2015 through 2017, states he was informed that van der Weijden's incentive package at J2 was based on the number of deals he closed, rather than the quality of the acquisitions. *Id.* ¶¶ 48, 50. Van der Weijden sourced and handled nearly 73% of J2's mergers and acquisitions transactions (135 out of 186 transactions). *Id.* ¶ 57. In the former employee's opinion, van der Weijden's incentive structure was "concerning," and J2 was "atrocious" about buying businesses and not integrating them at the global level. *Id.* ¶ 51. According to the former employee, J2 overpaid for the acquisition of two companies in the Australia/New Zealand market, Web24 and AUSweb. *Id.* ¶ 52. The former employee was told not to speak publicly about new acquisitions, how much was paid for them, or how they were performing. *Id.* ¶ 53. In October 2017, J2 announced the sale of its Australian hosting business, which had integrated AUSweb and other small companies into Web24. *Id.* ¶ 54. None of the terms of these acquisitions had been disclosed to the market, and without more information about how J2 Australia has been performing in J2's financial statements, the market has been unable to gauge accurately the strength of J2's acquisition system or strategy. *Id.* ¶¶ 54-55.

3. *Misleading Accounting Methods*

Rather than breaking out its acquisitions individually in its financial statements, J2 instead reports its financials on a consolidated basis for each of its two divisions. *Id.* ¶ 4. Plaintiff states that while J2's goodwill should rise and fall with the value of its acquired businesses, J2 has concealed the underperformance of its acquired assets by never taking a goodwill impairment. *Id.* ¶¶ 4, 9. This leads J2's stock to become artificially inflated and allows J2 to tout falsely a "strategy of acquiring solid companies capable of independent organic growth." *Id.* ¶ 5. Plaintiff points to two key assets as examples of underperformance, Global Ireland Limited ("J2 Ireland") and Everyday Health Group ("Everyday Health"). *Id.* ¶¶ 91-102.

***J2 Ireland.*** In 2015, J2 Ireland, a wholly owned subsidiary of J2 Holdings, which in turn is controlled by J2, took a €22.1 million charge, and subsequently saw its revenue decline 27% over the next three years. *Id.* ¶¶ 10, 93-94. J2 Ireland's operating income also dropped from €5.2 million to negative €11.5 million. *Id.* ¶¶ 10, 94. J2 did not take any related goodwill charge and did not make any related disclosures in its financial statements for 2015. *Id.* ¶¶ 10, 93.

***Everyday Health.*** In December 2016, J2 made its largest acquisition to date by buying Everyday Health for $493 million. *Id.* ¶ 98. Everyday Health's revenue dropped from $254 million to $171 million in the first year after acquisition, and still has not reached

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

pre-acquisition levels.  *Id.* ¶¶ 11, 99.  J2 explained Everyday Health's drop in revenue as a period of "shrink to grow," where it sold off non-core and marginally profitable assets.  *Id.* ¶¶ 101, 218.  According to Plaintiff, J2 has made two divestitures and several acquisitions in its Everyday Health division to obfuscate the true value of the Everyday Health acquisition.  *Id.* ¶ 100.  Despite the underperformance, J2 has not taken a goodwill impairment.  *Id.*

In all, J2's consolidated financials allow it to hide "any potentially impaired assets or losses on any individual acquisition [that] may not technically be material on its own and thus would not be disclosed," and the lack of impairments in J2's financials misleadingly signals to investors that the acquisitions were properly valued.  *Id.* ¶¶ 9, 89.

### 4.  Lack of Board Member Independence

Plaintiff includes the following chart in the Consolidated Complaint to outline the overlapping business interests of members of J2's Board, including members of the audit committee ("AC"), compensation committee ("CC"), and corporate governance committee ("CGC"), which he alleges were not disclosed to investors:

| | Richard Ressler | Brian Kretzmer | Stephen Ross | Douglas Bech | Robert Cresci |
|---|---|---|---|---|---|
| **Role at J2** | Independent Board Chair, 1/1997-Now | Independent Director & AC Chair, 7/2007-Now | Independent Director & AC Member, 7/2007-Now | Independent Director, CGC Chair & CC Member, 11/2000-Now | Independent Director, 1998-Now |
| **Presbia** | Director, 1/2015-Now | | | | Director. 3/2015-Now |
| **MAI** | Board Chair, 1/1995-2006 | CEO, 1999-2006; CFO, 1993-1996 &1999-2000 | Director, 5/2001-2006 | | |
| **Universal Telecom** | Board Chair, 1999-2016 | Former Consultant | | | |
| **CIM Group** | Co-Founder & Principal, 1994-Now | Independent Director, 2/2018-Now | | | |
| **CMCT** | Board Chair, 12/2017-Now | | | Independent Director, CGC Chair & AC & CC Member, 3/2014-Now | Director & AC Chair, 4/2014-Now |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

*Id.* ¶ 103.   According to Plaintiff, directors Kretzmer, Ross, Bech, and Cresci "are all beholden to Ressler" as a result of the positions they have held at companies controlled by Ressler, and "cannot be relied upon to protect the interests of J2 shareholders above their own when faced with a deal that Ressler wanted the Board to approve." *Id.* ¶¶ 104-05. Further, Orchard Capital, which Ressler founded, had invested in both Universal Telecom Services, Inc. ("Universal Telecom") and Presbia PLC ("Presbia"). *Id.* ¶ 83.   Defendant Zucker was Universal Telecom's President and CEO, and the company was dissolved in December 2016. *Id.*

### B.    Plaintiff's Loss and Legal Claims

Plaintiff contends that by concealing losses associated with individual acquisitions and failing to disclose the insider nature of some of its transactions, Defendants misrepresented J2 Global's true health as a business and artificially inflated its stock price. *Id.* ¶ 5. According to Plaintiff, the truth was revealed beginning in March 2016, when Citron Research posted an online article claiming J2 used the money generated by its eFax business to prop up its "unremarkable and/or useless" acquisitions. *Id.* ¶ 257.   That same day, shares of J2 dropped $14.09 per share, or nearly 20%. *Id.* ¶ 258.   And in June 2020, Hindenburg Research, a short-seller, published an online report stating J2's acquisitions led to insider self-enrichment, J2 masked the underperformance of acquisitions by utilizing "tricky accounting," and J2 failed to disclose financial interests between Board members and executives, calling the Board members' independence into question. *Id.* ¶¶ 260-63, 265. That same day, shares of J2 dropped $6.29 per share, or over 9%. *Id.* ¶ 264.

Based on the above allegations, the Consolidated Complaint asserts two claims for relief: (1) violations of § 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder ("Rule 10b-5") against all Defendants; and (2) violation of § 20(a) of the Exchange Act ("Section 20(a)") against Defendants Shah, Zucker, and Turicchi (the "Individual Defendants"). *Id.* ¶¶ 279-94.

### III.   Defendants' Notice of Incorporation by Reference and Requests for Judicial Notice

Generally, if a court considers evidence outside the contents of the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, it is converted into a motion for summary judgment under Fed. R. Civ. P. 56. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); Fed. R. Civ. P. 12(d).   But two doctrines allow a court to consider material outside the complaint without converting the motion into one for summary judgment: incorporation by reference and judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Defendants ask the court to consider twenty-five documents Defendants argue are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

incorporated into the Consolidated Complaint by reference and/or subject to judicial notice. Dkt. 43-2 ("RJN").   Plaintiff has not opposed Defendants' request.

### A.  Incorporation by Reference

"Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).   The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those same documents that weaken their claims.  *Id.*   A document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.* (quoting *Ritchie*, 342 F.3d at 907).   To qualify as "extensively referenced," the complaint must cite the document at least more than once or quote from it at length; merely mentioning the existence of a document is insufficient.  *Id.* at 1002-04.   A document forms the basis of a claim when it serves as the foundation for an element of the claim.  *See id.* at 1005.   If the document only creates a defense to the allegations in the complaint, however, then the document does not form the basis of the complaint.  *Id.* at 1002.

Unlike judicial notice, a court may assume an incorporated document's contents are true for purposes of a motion to dismiss, with the caveat that it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id.* at 1003.

Defendants request the court consider seventeen documents as incorporated into the Consolidated Complaint, including SEC filings, press releases, webpages, and other publicly available information about J2 from October 2015 through June 2020.   RJN at 3-7 (Exs. 1, 2, 4-8, 10-19).

The following exhibits are incorporated into the Consolidated Complaint because Plaintiff alleges the documents contain misrepresentations or omissions that form the basis of Plaintiff's claim.   *See Khoja*, 899 F.3d at 1005 (finding the district court did not abuse its discretion incorporating by reference articles that contained an alleged misrepresentation).

- Exhibit 2 (Dkt. 43-5), J2's Form 8-K filed with the Securities and Exchange Commission ("SEC") on October 5, 2015 and attached press release entitled "Acquisition Activity Expands with the Completion of Nine Acquisitions in the Third Quarter of 2015": Plaintiff alleges the document contained a misrepresentation and/or failed to disclose material facts about the VDW acquisition, and the Class Period begins on the date of the press release. Consol. Compl. ¶¶ 111-12.

- Exhibit 6 (Dkt. 43-9), J2's Annual Report on Form 10-K filed with the SEC on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

March 1, 2017 (the "2016 10-K"): Plaintiff alleges the 2016 10-K contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and underperforming assets. *Id.* ¶¶ 152-58.

- Exhibit 10 (Dkt. 43-13), J2's Annual Report on Form 10-K filed with the SEC on March 1, 2018 (the "2017 10-K"): Plaintiff alleges the 2017 10-K contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and underperforming assets. *Id.* ¶¶ 197-203.

- Exhibit 11 (Dkt. 43-14), J2's Schedule 14A filed with the SEC on March 23, 2018 (the "2018 Proxy Statement"): Plaintiff alleges the 2018 Proxy Statement contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and the independence of J2's Board. *Id.* ¶¶ 204-07.

- Exhibit 12 (Dkt. 43-15), J2's Annual Report on Form 10-K filed with the SEC on March 1, 2019 (the "2018 10-K"): Plaintiff alleges the 2018 10-K contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and underperforming assets. *Id.* ¶¶ 224-29.

- Exhibit 13 (Dkt. 43-16), J2's Schedule 14A filed with the SEC on March 22, 2019 (the "2019 Proxy Statement"): Plaintiff alleges the 2019 Proxy Statement contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and the independence of J2's Board. *Id.* ¶¶ 231-34.

- Exhibit 14 (Dkt. 43-17), J2's Annual Report on Form 10-K filed with the SEC on March 2, 2020 (the "2019 10-K"): Plaintiff alleges the 2019 10-K contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and underperforming assets. *Id.* ¶¶ 245-51.

- Exhibit 16 (Dkt. 43-19), J2's Schedule 14A filed with the SEC on March 26, 2020 (the "2020 Proxy Statement"): Plaintiff alleges the 2020 Proxy Statement contained a misrepresentation and/or failed to disclose material facts regarding related-party transactions and the independence of J2's Board. *Id.* ¶¶ 252-55.

The following exhibits are incorporated into the Consolidated Complaint because Plaintiff alleges they revealed the truth about J2 and caused its stock price to drop, thereby forming the basis of Plaintiff's claim. *See Khoja*, 899 F.3d at 1005 (finding the district court did not abuse its discretion incorporating by reference articles that purportedly caused a stock price drop); Consol. Compl. ¶¶ 257-65.

- Exhibit 4 (Dkt. 43-7), Citron Research internet post entitled "Citron Exposes the Dirty Secrets of j2 Global (JCOM)!" (dated March 10, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

- Exhibit 17 (Dkt. 43-20), Hindenburg Research internet post entitled "J2 Global: Troubling Related Party Transactions, Looming Impairments and a Suspicious History of Insider Enrichment Spanning Decades" (dated June 30, 2020).

The following exhibits are not incorporated by reference because the Consolidated Complaint does not extensively reference them, and any support they give to Plaintiff's claim is too tangential to "form the basis" of Plaintiff's claim. *See Khoja*, 899 F.3d at 1002.

- Exhibit 1 (Dkt. 43-4), MAI System Corp.'s Information Statement Schedule 14(c) filed with the SEC on March 18, 2005.

- Exhibit 5 (Dkt. 43-8), J2 Global Ireland Limited, Director's Report and Financial Statements For the Year Ended 31 December 2015.

- Exhibit 7 (Dkt. 43-10), J2's Form 8-K filed with the SEC on September 28, 2017 and attached press release entitled "j2 Global Announces Vivek Shah to Become Chief Executive Officer in January 2018 Hemi Zucker to Become Co-Managing Principal of OCV Management ('OCV') with j2 Global Becoming an OCV Limited Partner."

- Exhibit 8 (Dkt. 43-11), excerpt from OCV's webpage regarding its "team" as it appeared on December 5, 2017, available via the Internet Archive's Wayback Machine website.

- Exhibit 15 (Dkt. 43-18), J2's Global Analyst Day Presentation, dated March 4, 2020.

- Exhibit 18 (Dkt. 43-21), J2's Form 8-K filed with the SEC on July 6, 2020 and attached press release entitled "J2 Global Responds to False Claims and Distortions in Short-Seller 'Research Report.'"

- Exhibit 19 (Dkt. 43-22), excerpt from OCV's webpage regarding its portfolio.

Accordingly, the court GRANTS Defendants' request to consider Exhibits 2, 4, 6, 10-14, 16, and 17 incorporated by reference into the Consolidated Complaint, and DENIES Defendants' request as to Exhibits 5, 7, 8, 15, 18, and 19.

**B.    Judicial Notice**

The court may take judicial notice of facts not subject to reasonable dispute because they are either: (1) generally known within the trial court's territorial jurisdiction, or (2) capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Under this standard, courts may take judicial notice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

"*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records."  *Lee*, 250 F.3d at 690 (9th Cir. 2001) (emphasis in original). If the content of the document is subject to varying interpretations, then there is no fact "not subject to reasonable dispute," and the fact does not qualify for judicial notice.  *Khoja*, 899 F.3d at 1000.

A court must consider and identify which fact it is noticing from each document, because even if a document itself is susceptible to judicial notice, this "does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Id.* at 999. Facts identified as subject to judicial notice may then be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Defendants request this court take judicial notice of twenty-five documents as matters of public record that are not subject to reasonable dispute, which Plaintiff does not oppose. RJN at 8-10 (Exs. 1-25).  The court GRANTS Defendants' request for judicial notice in-part as to Exhibits 1, 3, 5, 7-9, 15, 18, 20, and 22-25 and takes judicial notice of the facts set forth below.  The court DENIES Defendants' request for judicial notice as to Exhibits 19 and 21 and DENIES AS MOOT the request for judicial notice as to Exhibits 2, 4, 6, 10-14, 16, and 17 because the court has found the Consolidated Complaint incorporates them by reference.

First, Defendants ask the court to take judicial notice of the following documents filed with the SEC:

- Exhibit 1 (Dkt. 43-4), MAI System Corp.'s Information Statement Schedule 14(c) filed with the SEC on March 18, 2005.

- Exhibit 3 (Dkt. 43-6), J2's Form 10-Q filed with the SEC on November 9, 2015.

- Exhibit 7 (Dkt. 43-10), J2's Form 8-K filed with the SEC on September 28, 2017 and attached press release entitled "j2 Global Announces Vivek Shah to Become Chief Executive Officer in January 2018 Hemi Zucker to Become Co- Managing Principal of OCV Management ("OCV") with j2 Global Becoming an OCV Limited Partner."

- Exhibit 9 (Dkt. 43-12), exhibit 10.9 to J2's 2017 10-K entitled "OCV Fund I, L.P. Second Amended and Restated Limited Partnership Agreement," dated January 19, 2018 and filed with the SEC on March 1, 2018.

- Exhibit 18 (Dkt. 43-21), J2's Form 8-K filed with the SEC on July 6, 2020 and attached press release entitled "J2 Global Responds to False Claims and Distortions in Short-Seller 'Research Report'."

While courts may take judicial notice of SEC filings, *Dreiling v. Am. Exp. Co.*, 458 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

942, 947 n.2 (9th Cir. 2006), it may not take judicial notice of the filings for the truth of disputed facts asserted within them.   See Fed. R. Evid. 801(c); *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) ("SEC filings 'should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents.") (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996)); *Shapiro v. Hasbro, Inc.*, 2016 WL 9176559, at *4, n.10 (C.D. Cal. Aug. 23, 2016) (taking judicial notice on summary judgment of SEC filings to show that a statement was made, but not for the truth of the statement).   Accordingly, the court takes judicial notice of the fact that representations or disclosures were made in Exhibits 1, 3, 7, 9, and 18, but does not take notice of the truth of the factual assertions within them.

Similarly, Defendants request the court take judicial notice of Exhibit 5 (Dkt. 43-8), the Director's Report and Financial Statements For the Year Ended 31 December 2015 for J2 Global Ireland Limited.   As this document is essentially the foreign equivalent of a Form 10-K, per the reasons above, the court takes judicial notice only of the fact that representations or disclosures were made within the document.   See *Troy Grp.*, 364 F. Supp. 2d at 1152.

Defendants also request the court take judicial notice of certain documents available online to the public:

- Exhibit 8 (Dkt. 43-11), an excerpt from OCV's webpage regarding its "team" as it appeared on December 5, 2017, available via the Internet Archive's Wayback Machine website.

- Exhibit 20 (Dkt. 43-23), three press releases reporting that Nehemia Zucker was added to the Board of Directors of three companies in which OCV invested, dated April 14, 2020, April 15, 2020, and March 4, 2019.

- Exhibit 23 (Dkt. 43-26), two Reuters articles regarding Andrew Left, the founder of Citron Research, dated October 21, 2015 and February 26, 2019.

Courts may take judicial notice that the information contained in sources such as news articles, press releases, and webpages was available to the public.   See *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants."); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Taking judicial notice of news reports and press releases is appropriate for show[ing] 'that the market was aware of the information contained in news articles'" (citations omitted)); *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015) (noting the court "may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted in the article"); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. 2015) (finding webpages available on the Internet Archive's Wayback Machine are subject to judicial notice).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

The existence of these pages in the public realm on the relevant dates is not subject to reasonable dispute, and Plaintiff does not challenge them.   The court, therefore, takes judicial notice of the fact that the information contained in Exhibits 8, 20, and 23 was reported publicly as of the publication date or date portrayed on the Wayback Machine, but does not take notice of the truth of the information asserted within the exhibits.

Defendants request the court take judicial notice of additional webpages:

- Exhibit 19 (Dkt 43-22), an undated excerpt from OCV's webpage regarding its portfolio.

- Exhibit 21 (Dkt. 43-24), five undated webpages showing the members of the Boards of Directors of five OCV investments.

These webpages lack any date showing when the information was published or otherwise available for public viewing online.   According to the headers stamped on the documents, some of these webpages appear to have been captured outside the Class Period on December 16, 2020.   Because the court is not able to ascertain whether any information within these webpages was available to the public during the relevant Class Period, judicial notice of Exhibits 19 and 21 is denied.   *See Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1284 (C.D. Cal. 2016) (declining to take judicial notice where webpages were captured outside the relevant time period for the claims).

Defendants also request the court take judicial notice of Exhibit 15 (Dkt. 43-18), J2's Global Analyst Day Presentation, dated March 4, 2020.   Since the slides appear to have been publicly available and Plaintiff does not oppose the request, the court takes judicial notice only of the fact that the information contained in the presentation was available to investors as of March 4, 2020.   *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) (taking notice of Analyst Day Presentation because it appeared to have been publicly available to reasonable investors at the time the defendant made the allegedly false statements); *see also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking judicial notice of analyst report to establish whether and when certain information was provided to the market, but not the truth of the matters asserted in the reports).

Further, Defendants request the court take judicial notice of Exhibit 22 (Dkt. 43-25), a Yahoo Finance stock chart showing J2's stock price as of December 14, 2020.   The court takes judicial notice of the fact that J2's stock price was $100.13 per share on December 14, 2020.   *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (finding judicial notice of reported stock price history "proper"); *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1349 (C.D. Cal. 2014) ("Because publically [sic] traded companies historical stock prices can be readily ascertained and those prices are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

not subject to reasonable dispute, courts routinely take judicial notice of them.").

Finally, Defendants request the court take judicial notice of two accounting standards from the Financial Accounting Standards Board ("FASB"):

- Exhibit 24 (Dkt. 43-27), FASB's Accounting Standards Codification Topic 350 on Intangibles—Goodwill and Other, Section 350-20-20.

- Exhibit 25 (Dkt. 43-28), FASB's Accounting Standards Codification Topic 810 on Consolidation, Section 810-10-10-1.

"[J]udicial notice is appropriate for ... accounting rules as they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'"  *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at \*2 (N.D. Cal. Aug. 10, 2012), *aff'd* 611 F. App'x 387 (9th Cir. 2015) (citing *In re Asyst Techs., Inc. Deriv. Litig.*, No. 06-4669, 2008 WL 2169021, at \*1 n.1 (N.D. Cal. May 23, 2008)). Courts, therefore, regularly take judicial notice of published accounting standards.  *See, e.g., Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1179 (S.D. Cal. 2009) (taking judicial notice of accounting standards related to audit procedures for internal control); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 561 n.18 (N.D. Cal. 2009) (taking judicial notice of FASB documents because they are "publicly available from the FASB's website"); *In re New Century*, 588 F. Supp. 2d 1206, 1219 (C.D. Cal. 2008) (taking judicial notice of excerpts from the Statement of Financial Accounting Standards).  Accordingly, the court takes judicial notice of the FASB standards in Exhibits 24 and 25.

## IV.    Defendants' Motion to Dismiss

### A.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A district court properly dismisses a claim if the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).   Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations."   *Iqbal*, 556 U.S. at 679.   "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"   *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Securities fraud claims must also meet a higher pleading standard.   It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must … satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')."   *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).   Fed. R. Civ. P. 9(b) "requires particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading … about the statement and why the statements were false or misleading at the time they were made."   *Id.*   The PSLRA requires "plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter."   *Id.*

When ruling on a Rule 12(b)(6) motion to dismiss a Section 10(b) action, "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.     Count I: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 (Against All Defendants)**

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).   One of the rules promulgated under the Act is SEC Rule 10b–5, which makes it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of any security.   17 C.F.R. § 240.10b-5(b).

The "elements that must be pleaded to state a claim for securities fraud are strenuous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

but well established." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). To state a claim for violation of Section 10(b), a plaintiff must prove: (1) a material misrepresentation or omission by the defendant (*i.e.*, falsity); (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

Defendants argue Plaintiff fails to establish a material misrepresentation or omission, scienter, and loss causation. Dkt. 43-1.

> 1. *Material Misrepresentation or Omission*

"The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler*, 540 F.3d at 1070. To allege falsity properly, a securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The particularity requirement "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler*, 540 F.3d at 1061.

Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (citing 17 C.F.R. § 240.10b-5(b)); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5"). A company can control what it is required to disclose by controlling what it states to the market, but once the company chooses to disclose favorable information, it is bound to do so in a manner that will not mislead investors, including disclosing adverse information that cuts against the positive news. *Schueneman*, 840 F.3d at 705-06.

The securities laws, however, "prohibit *only* misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis in original). There is no requirement that "once a disclosure is made, there is a duty to make it complete and accurate." *Id.* An incomplete statement is not necessarily misleading and a rule of absolute completeness would sweep too broadly, as "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Id.* Disclosure, thus, is required only when necessary "[t]o make ... statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5(b). In other words, to be actionable, an omission "must be misleading … it must affirmatively create

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | | |

an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006.

For an omission to be material, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Whether an omission is material, a statement is misleading, or whether adverse facts were adequately disclosed are generally questions that should be left to the trier of fact. *Fecht v. The Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995); *see also Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511-DDP (PJWx), 2013 WL 816409, at *5 (C.D. Cal. Mar. 5, 2013) ("Materiality is rarely appropriate to decide at the motion to dismiss stage."). Only if the adequacy of the disclosure or the immateriality of the statement are "so obvious that reasonable minds cannot differ" are the issues appropriately resolved as a matter of law. *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987).

The Consolidated Complaint alleges Defendants made eighty statements that were false or misleading between October 2015 and June 2020. Consol. Compl. ¶¶ 110-255; Dkt. 42-3 (Appendix C). The allegedly misleading statements are sourced from a J2 press release regarding the acquisition of VDW, J2's quarterly earnings calls, J2's Form 10-K's, and J2's proxy statements. *Id.* Plaintiff largely proceeds on an omission theory of liability and challenges Defendants' statements for being false or misleading because, according to Plaintiff, Defendants should have made additional disclosures about related party transactions, the manner in which van der Weijden was compensated, the Board's overlapping business interests, and the underperformance of certain assets. *See, e.g., id.* ¶ 110.

Some examples of allegedly misleading statements made during earnings calls include that J2's "M&A strategy continued to drive both revenue and margin expansion," that J2 had a "healthy acquisition pipeline," and that J2's "M&A strategy was critical to the overall success of this year." *Id.* ¶¶ 117, 121, 142. Plaintiff also takes issue with J2's Form 10-K's and proxy statements for its statements that there were no indicators of goodwill impairment, directors were considered independent under SEC and Nasdaq rules, and that J2 did not engage in related party transactions requiring disclosure pursuant to securities regulations. *See id.* ¶¶ 110-255; Appendix C.

Defendants argue Plaintiff fails to establish falsity for each of four topics Plaintiff finds misleading: (1) the alleged related-party VDW and OCV transactions; (2) van der Weijden's compensation package; (3) J2's consolidated accounting method and goodwill assessment; and (4) the independence of J2's Board of Directors. Dkt. 43-1. The court considers each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

a.      *Alleged Related-Party VDW and OCV Transactions*

*J2's Acquisition of VDW.*   Plaintiff states that because Defendants chose to disclose the acquisition of VDW in a 2015 press release, they had a duty to disclose fully (which they failed to do) that a related party, van der Weijden, was involved in the transaction.   Consol. Compl. ¶ 67.   Plaintiff argues multiple statements made by Defendants were misleading because they did not disclose "the $900,000 VDW Acquisition was of an 11-month-old consulting business which had no employees, was barely in the process of commencing its licensing program when it was acquired, and was registered to the personal residence of long-time corporate insider van der Weijden who, at the time of the VDW Acquisition, was a director of [a J2 subsidiary]."   *E.g., id.* ¶ 132.   Defendants argue J2 was not obligated to make any disclosure about the transaction because the VDW acquisition was not a "related-party transaction" under Item 404 of Regulation S-K.   *See* 17 C.F.R. § 229.404; Mot. at 14.

Van der Weijden's status as a "related party" is a question of fact.   *See Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012).   Even if J2 was not required to disclose van der Weijden's involvement pursuant to Item 404, J2 had an independent duty to disclose information to ensure the statement it made to the market in its 2015 press release was not misleading.   *See Schueneman*, 840 F.3d at 706; *see also U.S. S.E.C. v. Brown*, 740 F. Supp. 2d 148, 159 (D.D.C. 2010) ("[T]he fact that Regulation S-K does not require disclosure of particular information does not answer whether the information is material to investors under the securities laws.").   Defendants argue "no investor could possibly have cared that a J2 consultant was involved in a transaction worth just $900,000."   Mot. at 14. However, a reasonable investor could have found the facts regarding van der Weijden's interest in VDW to have altered the "total mix" of information made available about J2. *Basic*, 485 U.S. at 231-32.   Given that the question of materiality is fact-intensive, the court declines to decide the issue on Defendants' motion to dismiss.   *See Fecht*, 70 F.3d at 1081.

In short, Plaintiff has met his burden of specifying each statement alleged to have been misleading regarding the VDW acquisition and the reasons why the statement is misleading.   *See* 15 U.S.C. § 78u-4(b)(1); *see also Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1119-20 (C.D. Cal. 2012) (finding party adequately pleaded failure to disclose facts in a transaction was misleading because "Plaintiffs have alleged with particularity the statements made by [defendant], explained in detail why they were misleading, and stated the basis for their belief.").   Accordingly, the court will not grant Defendants' Motion on this basis.

*J2's Investment in OCV Fund I, LP.*   Plaintiff alleges that because Defendants chose to disclose the $200 million investment in OCV Fund I, LP, they had a duty to disclose fully that related parties were involved both in the $200 million investment and in the companies in which OCV was investing.   Consol. Compl. ¶ 87.   Plaintiff also contends J2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

misleadingly did not disclose that an interested Board and audit committee authorized the OCV transaction.   *Id.* ¶ 186.   Plaintiff acknowledges J2 disclosed Ressler, the Chairman of the Board of Directors, and Zucker, the former CEO of J2, held significant equity and management powers in OCV.   *Id.* ¶¶ 71, 206, 233, 254.   Plaintiff also acknowledges J2 disclosed it paid management fees to OCV but maintains it did not properly convey the magnitude of the fees.   *Id.* ¶¶ 206, 233, 254; Opp. at 7.   Plaintiff appears to allege J2 should have further disclosed that Loshitzer, J2's Executive Vice President for Corporate Strategy, was also an OCV principal.   *Id.* ¶ 71.   According to Plaintiff, statements were materially misleading because they omitted the fact that "Defendant Zucker, Ressler, and Loshitzer would all profit handsomely from the management fees J2 had to pay," and that OCV had a "track record of investing in companies involving related parties, including Defendant Zucker, Board members and corporate insiders … ."   *E.g., id.* ¶¶ 186, 188, 207.

Defendants again assert J2 complied with Item 404 governing related party transactions and need not have disclosed Loshitzer's involvement in OCV or OCV's investments.   Mot. at 12.   Defendants further argue that since "J2 had already disclosed that its Board Chair and former CEO could profit from the OCV Investment, a less senior employee's involvement adds nothing."   *Id.*   Defendants again raise factual issues about J2's SEC compliance and the materiality of omissions.   The court declines Defendants' invitation to weigh the merits when considering the instant motion to dismiss.   *See Fecht*, 70 F.3d at 1081.   As to the statements Plaintiff alleges are misleading by omission of facts about the OCV transaction, Plaintiff has adequately pleaded with specificity the misleading statements and the reasons why they are misleading.   *See* 15 U.S.C. § 78u-4(b)(1).

           b.      *Van der Weijden's Incentive Package and the Alleged Overpayment for Assets*

Plaintiff alleges that various statements made by Defendants about its investment strategy or business were misleading because they omitted the fact that: (1) "a material number of deals were sourced and managed by van der Weijden and they all potentially had questionable value and/or fit because he was being paid for the number of deals he closed, not their quality or suitability and he caused J2 to acquire at least one company belonging to insiders without adequate disclosures"; (2) J2 had overpaid for "AUSweb, as it was a deal sourced and managed by van der Weijden who was being paid for the number of deals he closed, not their quality or suitability"; or (3) "J2 had overpaid for Web24."   *E.g.,* Consol. Compl. ¶¶ 114, 120.   Plaintiff's theory appears to be that J2's statements about the strength of its business were misleading, in part, because van der Weijden's incentive package led J2 to overpay for assets, including AUSweb and Web24.

Defendants argue that Plaintiff does not identify any affirmative duty to disclose a non-executive employee's incentive package.   Mot. at 18-19.   According to Defendants, Plaintiff also does not adequately plead how the former employee learned of van der Weijden's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

compensation, and the former employee's opinion that J2 overpaid for AUSweb and Web24 is not sufficient to establish falsity.  *Id.* at 19-20.   Plaintiff's Opposition does not address Defendants' arguments.

Defendants are correct.   First, the Consolidated Complaint does not identify any affirmative duty to disclose details about van der Weijden's compensation.  *See Basic*, 485 U.S. at 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5").   Plaintiff does not adequately establish why statements regarding J2's acquisitions gave rise to a duty to disclose the compensation of a director of a J2 subsidiary.  *See Brody*, 280 F.3d at 1006 (declining to adopt rule of completeness).   The court agrees Plaintiff's theory appears to be that van der Weijden's involvement in acquisitions "infected J2's M&A function and rendered misleading any statement related to that topic," which "does not add up."   Mot. at 19.

Moreover, Plaintiff's reliance on a former J2 employee's statements also fails.   To satisfy the PLSRA pleading requirements, statements by a former employee may be relied upon to establish falsity only where the complaint (1) describes the confidential witness "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged," and (2) provides an "adequate basis" for determining that the witness in question has "personal knowledge" of the events she reports. *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), *as amended* (Feb. 10, 2009)). For the first prong, the Ninth Circuit requires the complaint, at minimum, describe a confidential witness with a "large degree of specificity," including not just the witnesses' job description, but also her "responsibilities."   *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005).   For the second prong, a court looks to "the level of detail provided by the confidential source[], the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia."   *Zucco*, 552 F.3d at 995 (quoting *Daou*, 411 F.3d at 1015).

The Consolidated Complaint does not describe the former employee with particularity, lacking facts regarding the employee's responsibilities at J2.   The Consolidated Complaint also lacks facts supporting an inference that the employee had personal knowledge of van der Weijden's compensation and the AUSweb and Web24 acquisitions.   Rather, the former employee was "informed" of van der Weijden's incentive package and was apparently not positioned to know the details of his compensation firsthand.   *See Zucco*, 552 F.3d at 996-97 (noting the confidential witnesses at issue were "simply not positioned to know the information alleged" and "report[ed] only unreliable hearsay," which is not enough to satisfy the reliability standard).   Nor does the Consolidated Complaint state who informed the employee of van der Weijden's incentive package.   Further, the former employee's mere opinion that J2 paid too much for Web24, and belief that van der Weijden overvalued

**Page 19 of 30**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

AUSweb, cannot substitute for particularized factual allegations regarding the transactions. *See, e.g.*, *Mazzaferro v. Aruba Networks Inc.*, 2015 WL 456534, at *2 (N.D. Cal. Feb. 2, 2015) (finding the unsupported opinion of a confidential witness could not replace specific factual allegations).

Accordingly, Plaintiff does not adequately plead falsity for those statements based on allegations regarding van der Weijden's compensation and the overpayment for AUSweb and Web24.

   c.  *Alleged Misleading Accounting*

Plaintiff alleges J2's consolidated financials allow it to hide impaired assets or losses and the lack of goodwill impairments in J2's financials misleadingly signals to investors that J2's acquisitions were properly valued.  Consol. Compl. ¶¶ 9, 89.  Specifically, Plaintiff alleges that certain statements, including statements in J2's financials regarding its accounting and goodwill, were misleading because: (1) J2 Ireland took a €22.1 million charge in 2015 and was "significantly underperforming"; (2) "J2 did not disclose the terms of its small acquisitions, [so] it was able to tout the successful results of the [VDW acquisition] as based on its value-add even though it actually did not add anything to the acquired business"; (3) "J2's deals were not performing well and only appeared to be doing well through Defendants' misleading accounting"; and (4) Everyday Health was significantly underperforming after being acquired in December 2016, but "that underperformance was effectively obfuscated."  *E.g.*, *id.* ¶¶ 114, 124, 221.  Plaintiff concedes that "[a]ny potentially impaired assets or losses on any individual acquisition may not technically be material on its own."  *Id.* ¶ 89.

**Consolidated financials.**  Defendants note that while J2 reports its financial results on a consolidated basis, this is a standard accounting practice recommended by the FASB. Mot. at 15 (citing RJN Ex. 25).[1]  J2 also discloses annual financial information for each of its business segments and major investments.  *See, e.g.*, RJN Ex. 12 at 313-18, 371-73. Further, J2 has told the market that it does not provide separate results for individual acquisitions because integration makes it "impracticable" to identify the income contributed by any particular acquisition.  *See, e.g.*, RJN Ex. 6 at 185.  Defendants argue that investors, therefore, could not have been misled by J2's consolidated financials.  Mot. at 15. Defendants also argue that Plaintiff's own allegations show J2 explained Everyday Health was in a "shrink to grow" period that involved eliminating some of its less profitable revenue generating assets, so investors were not misled about J2 prioritizing Everyday Health's

---

[1] Per above, the court has found the documents cited here are either incorporated into the Consolidated Complaint or subject to judicial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

profitability over gross revenue.[2]  *Id.* at 16-17; Consol. Compl. ¶ 165.   Plaintiff does not respond to these arguments.

The court declines to find that J2's consolidated financial statements are not misleading as a matter of law, as this raises questions of fact.   *See Fecht*, 70 F.3d at 1081. Even assuming Defendants followed standard accounting practices, Defendants' consolidated method may still have "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]."   *Brody*, 280 F.3d at 1006.   Plaintiff, therefore, has met his burden by alleging the consolidated results were misleading because they concealed struggling acquisitions or the performance of corporate subsidiaries. Consol. Compl. ¶¶ 89-90.

***Lack of goodwill impairment.***   Defendants note J2 explains its goodwill is occasionally tested and takes an impairment charge if J2 estimates that an acquired asset's fair value has dipped below the carrying value.   RJN Ex. 14 at 467.   Defendants argue statements about goodwill valuations are "opinion" statements under Ninth Circuit law, and Plaintiff does not plead sufficient facts for opinion liability.   Plaintiff does not address this argument.

Statements about goodwill valuations constitute opinion statements because they are "inherently subjective and involve management's opinion regarding fair value."   *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).   Under Ninth Circuit precedent, it is particularly difficult for an investor to allege a statement of opinion amounts to securities fraud.   A statement of belief or opinion does not give rise to liability under the federal securities laws unless the plaintiff pleads with particularity that: (1) the speaker did not actually hold the belief in the opinion statement; (2) there is no reasonable basis for the belief; or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.   *Id.* at 616.   When relying on an omission theory, a plaintiff must allege "facts going to the basis for the issuer's opinion … whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."   *Id.* (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).   This is "no small task for an investor."   *Id.* at 615 (quoting *Omnicare*, 575 U.S. at 194).

Here, the Consolidated Complaint does not adequately allege particularized facts that show: (1) Defendants did not actually believe J2's goodwill was not impaired; (2) there was no reasonable basis for that belief; or (3) Defendants knew of undisclosed facts that would

---

[2] Further, Defendants argue various statements Plaintiff identifies as misleading based on consolidated accounting are inactionable puffery.   Mot. at 16.   The court need not reach this argument to make its ruling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

undermine its conclusion about goodwill.   *See Align Tech.*, 856 F.3d at 616 (holding plaintiff failed to plead sufficiently falsity for statements of goodwill).   Plaintiff alleges J2's statements regarding goodwill were misleading because J2 Ireland took an impairment charge, and Everyday Health's revenue declined after J2 acquired it.   Consol. Compl. ¶¶ 10-11.   It does not follow, however, that there was thus "no reasonable basis" for J2's goodwill statements, and Plaintiff does not allege as such.   Further, as the Hindenburg Research article illustrates, facts about J2 Ireland's impairment charge and Everyday Health's revenue decline were publicly available.   *See* RJN Ex. 17 at 598-603.   Plaintiff does not argue to the contrary, and thus fails to plead there were "undisclosed facts" that undermined the goodwill statements in J2's financials.

Plaintiff, therefore, fails to adequately plead a material misrepresentation or omission for statements regarding J2's goodwill.

### d.    Alleged Interested Board of Directors

Plaintiff alleges that Defendants' statements in its proxy statements that its directors other than its CEO were "independent within the meaning of the rules of the SEC and the listing rules of the NASDAQ stock market" were misleading because J2 did not disclose business relationships between Board Chairman Ressler and four other directors, which allegedly made them "beholden" to Ressler.   *See, e.g.*, Consol. Compl. ¶ 105, 159. Specifically, Plaintiff alleges the proxy statements were misleading because Defendants failed to disclose that: (1) "Ressler and Cresci were both Directors of Presbia"; (2) "Ressler was a principal and Kretzmer was an Independent Director of CIM Group, and CIM Group managed CMCT, of which Bech and Cresci were both Directors"; and (3) "Kretzmer has previously done M&A consulting work for Orchard Capital."   *E.g., id.* ¶ 131.

Defendants argue that looking to Nasdaq and SEC rules, statements regarding the Board's independence are necessarily opinions, and Plaintiff fails to meet the pleading standards to allege the falsity of opinion statements.   Mot. at 7-9.

The test for director independence under SEC and Nasdaq rules is subjective, and so long as a director is not an employee of the company or paid by it beyond his director fees, the director is independent unless he has "a relationship which, in the opinion of the company's Board of Directors, would interfere with the exercise of independent judgement in carrying out the responsibilities of a director."   Nasdaq Listing Rules 4200(a)(15), 5605(a)(2); *see also* 17 C.F.R. § 229.407 (2019) (SEC rules deferring to the "listing standards applicable to the registrant").[3]   Since Plaintiff does not allege that any directors he claims are interested

_____

[3] Plaintiff argues this raises a question of whether Defendants complied with Nasdaq and SEC rules, and thus is an issue of fact.   Opp. at 15-16.   But the court need not evaluate whether Defendants complied with the rules; the Consolidated Complaint does not challenge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

were J2 employees or compensated by J2 beyond director fees, he must necessarily challenge the Board's opinion that they were capable of exercising independent judgment.

Plaintiff does not plead, with particularity, facts to establish that: (1) Defendants did not actually believe the directors were independent; (2) there was no reasonable basis for the belief that the directors were independent; or (3) Defendants knew of undisclosed facts tending seriously to undermine the statement that the directors were independent.   *See Align Tech., Inc.*, 856 F.3d at 616.   Instead, Plaintiff offers a conclusory opinion that the Board and audit committee members were "beholden" to Ressler and not independent because of certain undisclosed overlapping business relationships.   Plaintiff argues in a footnote that he can proceed under the third pleading standard because he alleges Defendants knew of but concealed numerous substantive business interests that rendered J2's directors interested.   Opp. at 16.

J2, however, appears to have disclosed many of the connections between Ressler and the other directors that allegedly undermined their independence, including, among others, that: (1) Ressler, Cresci, and Bech served on the CMCT board (*see, e.g.*, RJN Ex. 13 at 382-83; RJN Ex. 16 at 565-66); (2) Ressler and Cresci served on Presbia's board (*see, e.g.*, RJN Ex. 11 at 298-99); (3) Ressler and Kretzmer were on the boards of overlapping companies (*see, e.g.*, RJN Ex. 16 at 565); and (4) Kretzmer was CEO of MAI from 1999 to 2006 (*id.*).[4]   Such facts, therefore, are not "undisclosed."   Even if Defendants did not disclose "*all* of the alleged relationships" between directors as Plaintiff contends, Opp. at 14, the rule of completeness does not apply in the Ninth Circuit.   *Brody*, 280 F.3d at 1006. Additionally, Plaintiff fails to plead with particularity that Defendants "knew" of undisclosed facts serving to undermine the statement that the directors were independent.   *See infra* Section 2 (scienter analysis).

Accordingly, Plaintiff fails to plead adequately falsity for statements regarding the J2 Board's independence.

---

as false or misleading J2's statement that it used SEC and Nasdaq rules to assess the independence of its board.   *See, e.g.*, Consol. Compl. ¶¶ 159-60.   The rules merely contain the standard by which J2's Board assessed the independence of its directors.

[4] Plaintiff argues Defendants' reliance on these facts is a "truth-on-the-market" defense not suitable for assertion in a motion to dismiss.   Opp. at 13-15.   J2's disclosures, however, are properly before the court because they are incorporated into the Consolidated Complaint, and demonstrate Plaintiff has not met his burden to plead facts with particularity.   *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (affirming dismissal because allegedly omitted information was publicly available).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

2.      *Scienter*

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."   15 U.S.C. § 78u-4(b)(2)(A).   A defendant acts with the required state of mind, or scienter, only if she makes false or misleading statements either intentionally or with deliberate recklessness. *See Daou*, 411 F.3d at 1015.   "[D]eliberate recklessness is 'an *extreme* departure from the standards of ordinary care ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.'" *Schueneman*, 840 F.3d at 705 (quoting *Zucco*, 552 F.3d at 991) (emphasis in original).   A "strong inference" under 15 U.S.C. § 78u-4(b)(2)(A) "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."   *Tellabs*, 551 U.S. at 314.   "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness."   *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).

When analyzing the sufficiency of a plaintiff's scienter pleadings, a court first must "determine[s] whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter."   *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011).   If no individual allegation is sufficient, the court "conduct[s] a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness."   *Id.*

Here, the Consolidated Complaint states it is "appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in [J2's] public filings, press releases and other publications … are the collective actions" of Defendants.   Consol. Compl. ¶ 30.   Plaintiff then alleges:

> Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of J2 were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.   These defendants by virtue of their receipt of information reflecting the true facts of J2, their control over, and/or receipt and/or modification of J2's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning J2, participated in the fraudulent scheme alleged herein.

*Id.* ¶ 283.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

Such "group pleading" is not sufficient to plead scienter.   The group pleading doctrine is "a presumption that the allegedly false and misleading 'group published information' complained of is the collective action of officers and directors."   *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995).   "Although the Ninth Circuit has not addressed whether the group pleading doctrine survived the PSLRA, at least two circuit courts as well as the majority of district courts within the Ninth Circuit have concluded that the group pleading doctrine in no longer available."   *Kronk v. Landwin Grp. LLC*, No. SA CV 10-00344-CJC (MLGx), 2011 WL 13143097, at *3 n.1 (C.D. Cal. Jan. 28, 2011); *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) (holding that "the group pleading doctrine can no longer be used in pleading cases under the PSLRA"); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *8 (C.D. Cal. Aug. 21, 2009) (finding complaint deficient because it did not allege "facts giving rise to a strong inference of scienter on the part of each Individual Defendant").   Accordingly, Plaintiff must "allege scienter with respect to each of the individual defendants."   *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).

Plaintiff, who appears to concede group pleading is not sufficient to plead scienter, argues he did not improperly rely on group pleading because he made a handful of factual allegations about each Defendant by name that "describe each defendant's participation in the alleged fraud."   Opp. at 21-22.   Upon review, these underlying factual allegations do not adequately establish a strong inference of deliberate recklessness for each Defendant.   For example, Plaintiff relies on the "core operations" theory of scienter, alleging Defendants Shah, Zucker, and Turicchi, as the "senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements [in the Consolidated Complaint], and … acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other J2 personnel to members of the investing public … ."   *Id.* ¶ 284.   Under this theory, "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."   *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).   The Ninth Circuit has noted that proof under the core operations theory "is not easy."   *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).

After reviewing the Consolidated Complaint, the court finds Plaintiff fails to plead sufficient particularized facts regarding the Individual Defendants' actual exposure to the facts underlying the allegedly misleading statements to succeed on a core operations theory. *See id.* (finding plaintiff did not adequately allege scienter where the complaint "lacked allegations of specific admissions by the individual defendants regarding their involvement with [the company's] operations").   The allegations in the Consolidated Complaint regarding the Individual Defendants' roles at J2 are far from "specific admissions from top executives that they are involved in every detail of the company."   *Daou*, 411 F.3d at 1022 (noting even

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

"allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports" are insufficient to establish a strong inference of scienter).

Plaintiff relies on *Berson v. Applied Signal Tech. Inc.*, 527 F.3d 982 (9th Cir. 2008) for the proposition that a defendant's management role may support a finding of scienter.   Opp. at 18.   The plaintiffs in *Berson*, however, properly could infer high-level managers must have known about circumstances that allegedly halted tens of millions of dollars of the company's revenue.   *Id.* at 988.   The Ninth Circuit described *Berson* as a "rare circumstance" where the nature of the relevant fact was of such prominence that it was "absurd" to suggest management was without knowledge of the matter.   *Killinger*, 542 F.3d at 786.   Here, however, Plaintiff fails to identify which facts, if any, underlying each Individual Defendant's statements were of such prominence that their knowledge of those facts may be inferred. *See, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1174 (C.D. Cal. 2007) ("[c]ourts have regularly declined to find a strong inference of scienter based on allegations that a [] defendant 'must have known' of information contradicting allegedly false statements because of that individual's position at the company."); *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *5 (C.D. Cal. Nov. 1, 2012) (rejecting scienter allegations based on "management role" of defendant); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 872 (N.D. Cal. 2004) (noting the assumption that officers have knowledge of certain information by virtue of their position within the company would reduce pleading scienter to "boilerplate assertions, which would defeat the PSLRA's requirement that scienter be pled with particularity").

Plaintiff also asserts that Defendants Zucker and Turicchi signed annual financial reports and attested to their accuracy.   Opp. at 21.   The Ninth Circuit, however, has rejected the notion that signing financial certifications is strongly indicative of scienter.   *See Zucco*, 552 F.3d at 1003-04; *see also In re Hansen*, 527 F. Supp. 2d at 1159 (finding signatures on various public filings did not give rise to a strong inference of scienter, and holding otherwise would "eviscerat[e] the pleading requirements for scienter set forth in the PSLRA").

Further, Plaintiff argues he alleged "Defendants' falsity enriched insiders … through self-dealing investments and management fees," which suggests motive and supports scienter.   Opp. at 22.   The Consolidated Complaint, however, is silent regarding how Defendant Turicchi was enriched by any alleged self-dealing transaction.   Although Plaintiff alleges Defendant Zucker, as principal of OCV, profited from the management fees J2 pays OCV and benefitted from J2's $200 million investment, Consol. Compl. ¶ 86, Plaintiff fails to establish any connection between the statements attributed to Zucker and his alleged enrichment.   Furthermore, J2 undisputedly disclosed that Zucker would benefit from the investment.   *E.g.*, Consol. Compl. ¶ 206; *see City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1132 (E.D. Wash. 2013) ("The fact that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

Defendants disclosed the adverse information publicly negates an inference of scienter … .").

Similarly, while Defendant Shah was promoted to CEO after J2 made the investment related to OCV, the details of his compensation were publicly disclosed. Plaintiff fails to explain how the timing of the announcement regarding Shah's new compensation shows Shah's intent to defraud investors, or how Shah's compensation, alone, establishes scienter. *See In re Rigel Pharm.*, 697 F.3d at 884 (finding a defendant's compensation not sufficient to allege scienter); *see also Rubke*, 551 F.3d at 1166 (holding allegations of motive and opportunity were not enough to create a strong inference of scienter).

Nor does Plaintiff plead any facts that, while not necessary to allege scienter, often provide support for it. For example, Plaintiff does not plead the Individual Defendants sold stock during the Class Period, or point to confidential witnesses or internal documents that speak to their state of mind. *See Crihfield v. CytRx Corp.*, 2017 WL 2819834, at *16 (C.D. Cal. June 14, 2017) (finding plaintiff's failure to identify any "inconsistent contemporaneous statements or information (such as internal reports) made by or available to the defendants" or allegations from an "inside source" bolstered the court's conclusion the plaintiff failed to adequately allege scienter).

Analyzing the Consolidated Complaint as a whole, the court finds Plaintiff has not adequately alleged scienter with respect to each Individual Defendant. For the sake of completeness, the court will address briefly Defendants' challenge to Plaintiff's pleading of loss causation. !

### 3.    Loss causation

To recover under a Section 10(b) claim, a plaintiff must establish "loss causation," namely a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). At the pleading stage, the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by "changing market conditions, changing investor expectations, or other unrelated factors." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014), *as amended* (Sept. 11, 2014).

The heightened pleading requirements of Fed. R. Civ. P. 9(b), however, also apply to loss causation in Section 10(b) actions. *Or. Pub. Employees Ret. Fund*, 774 F.3d at 605. A plaintiff can satisfy the loss-causation pleading burden by alleging that a "corrective disclosure" revealed the truth of a defendant's misrepresentation and thereby "caused the company's stock price to drop and investors to lose money." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*, 573 U.S. 258, 264 (2014)). To adequately plead a corrective disclosure, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

plaintiff must "plausibly allege that the defendant's fraud was *revealed* to the market and *caused* the resulting losses."  *Loos*, 762 F.3d at 887 (quoting *Metzler*, 540 F.3d at 1062) (emphasis in original).

Plaintiff alleges Defendants materially misled the investing public, thereby inflating the price of J2 common stock.  Consol. Compl. ¶ 268.  Plaintiff states he and other Class members were damaged when stock prices dropped because the "truth was revealed in part on March 10, 2016 and in full on June 30, 2020" through the publishing of the Citron and Hindenburg Research articles, respectively.  *Id.* ¶ 269.

Defendants argue the Citron and Hindenburg Research articles solely repackaged information already in the public domain, and thus do not qualify as "corrective disclosures."[5]  Mot. at 24.  Plaintiff does not dispute the articles only relied upon public information.  *See also* RJN Ex. 17 at 617 (Hindenburg Research post stating all information in the article was "obtained from public sources").  Instead, Plaintiff distinguishes case law within the Ninth Circuit and argues he has plausibly alleged a corrective disclosure.  *See* Opp. at 24-25.

"To rely on a corrective disclosure that is based on publicly available information, a plaintiff must plead with particularity facts plausibly explaining why the information was not yet reflected in the company's stock price."  *In re Bofl Holding, Inc. Sec. Litig.* (*In re Bofl*), 977 F.3d 781, 794 (9th Cir. 2020).

> A disclosure based on publicly available information can, in certain circumstances, constitute a corrective disclosure.  The ultimate question is again one of plausibility: Based on plaintiffs' particularized allegations, can we plausibly infer that the alleged corrective disclosure provided new information to

---

[5] Defendants briefly argue the Citron Research article "has nothing to do with [Plaintiff's] allegations" because it predates the OCV investment, does not mention the VDW acquisition, and is silent regarding J2's goodwill and director independence.  Mot. at 24.  Defendants concede, however, the article accuses J2 of using consolidated accounting to hide underperforming assets.  Reply at 24.  The article also discusses the alleged poor quality of J2's investments, of which Plaintiff complains.  *See generally* RJN Ex. 4.  Defendants also contend, in a footnote, that the two-year statute of limitations has expired as to the fraud the Citron Research article allegedly revealed.  *See* Mot. at 24; 28 U.S.C. § 1658(b).  The court declines to decide the statute of limitations issue on the present motion to dismiss.  *See Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").  Whether Plaintiff can establish the statute of limitations was tolled, for example, likely would involve questions of fact.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

the market that was not yet reflected in the company's stock price?   The fact that the underlying data was publicly available is certainly one factor to consider.   But other factors include the complexity of the data and its relationship to the alleged misstatements … and the great effort needed to locate and analyze it … . Courts must assess these and other factors on a case-by-case basis.

*Id.* at 795.

In *In re BofI*, the Ninth Circuit found that the plaintiff did not adequately allege eight posts by short-sellers were corrective disclosures because it was not plausible the "market reasonably perceived these posts as revealing the falsity of BofI's prior misstatements, thereby causing the drops in BofI's stock price on the days the posts appeared."   *Id.* at 797. The Ninth Circuit reasoned the posts were "authored by anonymous short-sellers" on a website called *Seeking Alpha* and included disclaimers stating they made "no representation as to the accuracy or completeness of the information set forth in this article."   *Id.*   Thus, a "reasonable investor reading these posts would likely have taken their contents with a healthy grain of salt."   *Id.*   Similarly, in *Grigsby v. BofI Holding, Inc. (Grigsby)*, 979 F.3d 1198 (9th Cir. 2020), the Ninth Circuit affirmed the district court's conclusion that a *Seeking Alpha* article did not constitute a corrective disclosure because it was written by "an anonymous short-seller," the article's analysis "did not require any expertise or specialized skills beyond what a typical market participant would possess," and it included a disclaimer that the author made "no representation as to the accuracy or completeness of the information."   *Id.* at 1208-09.

Here, the articles at issue were not anonymously posted on a website such as *Seeking Alpha*.   They were authored by two named firms.   *See generally* RJN Exs. 4, 17. Citron Research purports to have "spent considerable time and effort" preparing the report, and states it is "confident in [its] conclusions" within the article.   RJN Ex. 4 at 71.   Similarly, the Hindenburg Research article spans over forty pages, and states "[t]o the best of our ability and belief, all information contained herein is accurate and reliable …."   RJN Ex. 17 at 617.   Given the depth of the articles' analyses, the court cannot conclude, as a matter of law, that the articles did not reveal complex information or draw upon specialized research skills beyond what a typical market participant would possess.   It is thus more plausible here than in *In re BofI* and *Grigsby* that the market viewed the information in the Citron and Hindenburg Research articles as new information that was not yet reflected in J2's stock price.   Indeed, J2's stock price dropped nearly 20% and over 9% respectively the days the articles were published.   Consol. Compl. ¶¶ 258, 264.

Defendants cite several Ninth Circuit cases in support of their argument that the two articles cannot constitute corrective disclosures because they draw only on public information.   *See, e.g., Miller v. PCM, Inc.*, No. LA CV 17-3364-VAP (KSx), 2018 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:20-cv-06096-FLA (MAAx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Jeffrey Garcia v. J2 Global, Inc., et al. | | |

5099722, at *11 (C.D. Cal. Jan. 3, 2018) (finding the complaint did not adequately plead loss causation based on an anonymous short-seller article).   But Defendants' cited cases were decided before the Ninth Circuit clarified the plausibility standard for disclosures based on publicly available information in *In re BofI*, and are not controlling here.

Accordingly, the court finds Plaintiff has plausibly alleged the Citron and Hindenburg Research articles were corrective disclosures, and thus adequately pleaded loss causation.

> **C.     Count II: Violations of Section 20(a) of the Exchange Act (Against the Individual Defendants)**

Finally, Plaintiff's claim under § 20(a) of the Exchange Act requires an underlying § 10(b) violation.   Because Plaintiff fails to plead scienter adequately and the allegations are insufficient to support a claim under § 10(b), the § 20(a) claim also fails.   *See Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily … if a plaintiff fails to adequately plead a primary violation of section 10(b).").

**V.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED with 30 days' LEAVE TO AMEND.   *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) ("A complaint should not be dismissed without leave to amend unless amendment would be futile.").

Plaintiff shall file an amended complaint, if any, within 30 days of this order. Defendants shall have 30 days to file a response.

**IT IS SO ORDERED.**

_____    :   _____

Initials of Preparer     vrv    _____