# EXHIBIT A

**EFiled: Jul 29 2021 01:39PM EDT**
**Transaction ID 66806667**
**Case No. 2020-0819-JTL**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS OF EASTERN PENNSYLVANIA AND DELAWARE,     )<br>)<br>)<br>)<br>)<br>Plaintiff,     )<br>)<br>and     )<br>)<br>ORLANDO POLICE PENSION FUND, )<br>)<br>Plaintiff-Intervenor,     )<br>)<br>v.     )<br>)<br>RICHARD RESSLER, DOUGLAS Y. BECH, ROBERT J. CRESCI, SARAH FAY, W. BRIAN KRETZMER, JONATHAN F. MILLER, STEPHEN ROSS, HEMI ZUCKER, VIVEK SHAH, OCV FUND I, LP, OCV I GP, LLC, AND OCV MANAGEMENT LLC,     )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants,     )<br>)<br>and     )<br>)<br>J2 GLOBAL, INC.,     )<br>)<br>Nominal Defendant. ) | C.A. No. 2020-0819-JTL |

## STIPULATION AND AGREEMENT OF
## <u>COMPROMISE, SETTLEMENT, AND RELEASE</u>

This Stipulation and Agreement of Compromise, Settlement, and Release (the "Stipulation," the terms of which are the "Settlement"), dated as of July 29, 2021, is entered into by and between (i) Plaintiff International Union of Operating Engineers of Eastern Pennsylvania and Delaware (the "Plaintiff"); (ii) Plaintiff-Intervenor Orlando Police Pension Fund (the "Plaintiff-Intervenor," and together with the Plaintiff, the "Plaintiffs"); (iii) Plaintiffs Danning Huang ("Federal Plaintiff Huang") and Fritz Ringling ("Federal Plaintiff Ringling," and together with Federal Plaintiff Huang, the "Federal Plaintiffs"); (iv) Defendants Richard Ressler, Douglas Y. Bech, Robert J. Cresci (now deceased; his decedent's estate is a party to and will receive the benefits of this Settlement), Sarah Fay, W. Brian Kretzmer, Jonathan F. Miller, Stephen Ross, Hemi Zucker, and Vivek Shah (the "Individual Defendants"); (v) Defendants OCV Fund I, L.P. (the "Fund"), OCV I GP, LLC (the "General Partner"), and OCV Management LLC (the "Management Company," and together with the Fund and the General Partner, the "OCV Defendants"); and (vi) Nominal Defendant J2 Global, Inc. ("J2" or the "Company," and together with the Individual Defendants and the OCV Defendants, the "Defendants," and together with the Plaintiffs, the "Parties" and each, individually, a "Party") (the Parties together with the Federal Plaintiffs are referred to herein as the "Settling Parties," and each, individually, a "Settling Party"). The Settling Parties intend for this Stipulation to fully, finally, and forever resolve, discharge, and

settle the above-captioned action, *International Union of Operating Engineers of Eastern Pennsylvania and Delaware v. Ressler, et al.*, Del. Ch., C.A. No. 2020-0819-JTL, (the "Action") and the Released Claims (as defined below), subject to the approval of the terms and conditions by the Court of Chancery of the State of Delaware (the "Court");

WHEREAS, the Plaintiffs are stockholders of the Company;

WHEREAS, the Individual Defendants are current or former officers and directors of the Company;

WHEREAS, the Plaintiff filed a Verified Stockholder Derivative Complaint (the "Complaint") on September 24, 2020 (Trans. ID 65961337);

WHEREAS, the Complaint seeks relief derivatively on behalf of the Company based upon, among other things, alleged breaches of fiduciary duties and usurpation of corporate opportunity;

WHEREAS, the Complaint alleges, among other things, that:

(i)    On September 25, 2017, J2's Board of Directors and Audit Committee authorized the Company to invest $200 million in the Fund (the "Investment"). The Fund would invest in or acquire companies on behalf of J2, using, in part, monies from the Investment;

(ii)    All of the Individual Defendants breached their fiduciary duties by arranging for and approving the Investment;

(iii) Defendant Ressler is a director and stockholder in J2 and the majority equity holder in the Fund's General Partner and its Management Company. Defendant Zucker was formerly the Chief Executive Officer of J2 and is now the managing principal for the Management Company.

(iv)    Defendants Ressler and Zucker, and Zohar Loshitzer, who is not named as a defendant in the Action, breached their fiduciary duties and usurped corporate opportunities belonging to J2 by ceding to the Fund the opportunity to invest in or acquire other companies;

(v)    The Individual Defendants, except for Defendants Ressler and Zucker, breached their fiduciary duties by approving and arranging for J2's commitment to invest in the Fund and the Company's transfer of monies to the Fund;

(vi)    The OCV Defendants aided and abetted the Individual Defendants' breach of fiduciary duties; and

(vii)    Defendants Ressler and Zucker, and Zohar Loshitzer, who is not named as a defendant in the Action, aided and abetted breaches of fiduciary duties by the other Individual Defendants;

WHEREAS, the Complaint sought the following relief:

(i)    An award of damages and costs, including reasonable attorneys' fees and experts' fees, against the Individual Defendants and in favor of the Company; and

(ii)    Equitable and injunctive relief against the Individual Defendants and in favor of the Company;

WHEREAS, on August 14, 2020, before the Plaintiff filed the Complaint, the Plaintiff-Intervenor served a books and records demand on J2 for the purpose of investigating certain allegations similar to certain of the allegations that would be set forth in the Complaint (the "Demand");

WHEREAS, on September 29, 2020 and October 6, 2020, the Company provided books and records in response to the Demand;

WHEREAS, on October 19, 2020, the Plaintiff-Intervenor filed a Motion to intervene in and stay the Action pending the Plaintiff-Intervenor's investigation of the books and records provided by J2, wherein the Plaintiff-Intervenor indicated its intention to prosecute derivative claims challenging the Investment following the completion of the Plaintiff-Intervenor's books and records investigation (Trans. ID 66027725);

WHEREAS, pursuant to a stipulation and proposed order by and among the Parties that was granted on November 17, 2020, the Action was stayed until 30 days after the Plaintiff-Intervenor completed its investigation of the books and records provided by J2 (Trans. ID 66118278);

WHEREAS, J2 made additional productions of books and records in response to the Demand following the Court's November 17, 2020 grant of the Parties' stipulation and proposed order;

WHEREAS, on December 11, 2020, Federal Plaintiff Huang filed a Verified Stockholder Derivative Complaint ("Huang Complaint") in the United States District Court for the District of Delaware ("Federal Court") against Defendants Vivek Shah, Nehemia Zucker, R. Scott Turicchi, Douglas Y. Bech, Robert J. Cresci, Sarah Fay, W. Brian Kretzmer, Jonathan F. Miller, Richard S. Ressler, and Stephen Ross and Nominal Defendant J2 (the "Huang Action");

WHEREAS, beginning in late December 2020, counsel for Plaintiffs engaged in discussions with counsel for Defendants and counsel for a Special Committee of the J2 Board of Directors concerning a potential resolution of the Action;

WHEREAS, counsel for Plaintiffs determined to work together on behalf of their clients to explore potential resolutions of the Action for the benefit of J2 and its public stockholders;

WHEREAS, in January 2021, to facilitate settlement negotiations, J2 made available to the Plaintiff all books and records produced in response to the Plaintiff-Intervenor's Demand following execution of a confidentiality agreement by and between J2 and the Plaintiff;

WHEREAS, in February 2021, to facilitate settlement negotiations, Defendants produced certain confidential materials to Plaintiffs concerning the performance and valuation of the Fund's investment portfolio;

WHEREAS, on March 24, 2021, Federal Plaintiff Ringling filed a Verified Shareholder Derivative Complaint ("Ringling Complaint" and, together with the Huang Complaint, the "Federal Complaints") in the Federal Court against Defendants Vivek Shah, Nehemia Zucker, R. Scott Turicchi, Douglas Y. Bech, Sarah Fay, W. Brian Kretzmer, Jonathan F. Miller, Richard S. Ressler, and Stephen Ross and Nominal Defendant J2;

WHEREAS, the Huang Action and the Ringling Action were consolidated by an order entered by the Federal Court on April 8, 2021 into a consolidated action captioned: *In Re J2 Global Stockholder Derivative Litigation*, Master File No.: 20-cv-01687-LPS (the "Federal Action");

WHEREAS, among the claims made in the Federal Complaints are claims that are made in the Complaint ("Overlapping Claims");

WHEREAS, in April 2021, after J2 and the Federal Plaintiffs signed a confidentiality agreement, J2 produced to the Federal Plaintiffs all of the books and records that J2 had produced in response to the Plaintiff-Intervenor's Demand;

WHEREAS, in June 2021, to facilitate settlement negotiations, Defendants produced certain additional confidential information to Plaintiffs concerning the performance and valuation of the Fund's investment portfolio;

WHEREAS, in June 2021, Plaintiffs informed Federal Plaintiffs concerning the status of settlement negotiations with Defendants and, thereafter, Plaintiffs and Federal Plaintiffs agreed to work together on the Overlapping Claims for purposes of finalizing a resolution of the Action to benefit J2 and its public stockholders;

WHEREAS, in June 2021, after J2 and the Federal Plaintiffs signed an additional confidentiality agreement, J2 produced to the Federal Plaintiffs all of the confidential information that J2 had produced to Plaintiffs concerning the performance and valuation of the Fund's investment portfolio;

WHEREAS, following an analysis of the strengths and weaknesses of the Action and Overlapping Claims, including review and analysis of the books and records and other nonpublic materials the Plaintiffs and Federal Plaintiffs received, the Plaintiffs' counsel and Federal Plaintiffs' counsel believe that the settlement consideration reflected below provides the Company and its stockholders with substantial benefits that address each of the claims in the Complaint and the Overlapping Claims;

WHEREAS, although the Plaintiffs and Federal Plaintiffs believe that the Action and Overlapping Claims are meritorious and assert valid claims, they are agreeing to settle the Action and Overlapping Claims to eliminate the uncertainties inherent in further litigation and in recognition of the benefits that this Settlement will afford the Company and its stockholders;

WHEREAS, the Plaintiffs and the Federal Plaintiffs and their counsel have determined that the terms of the Settlement are fair, reasonable, adequate, and in the best interests of the Company and its stockholders and that it is reasonable to pursue a settlement of the Action and Overlapping Claims based upon those terms and the procedures outlined herein;

WHEREAS, at all times, each of the Individual Defendants and the OCV Defendants has denied, and continues to deny, the allegations of wrongdoing in the Complaint and Overlapping Claims, including that he, she, or it has committed any breach of fiduciary duty or aided and abetted any breach of fiduciary duty, including, without limitation, by arranging for and approving the Investment or otherwise engaging in any of the wrongful acts alleged in the Action;

WHEREAS, each of the Defendants expressly maintains that he, she or it has at all times complied with his, her or its fiduciary and/or other legal duties; and

47973036.1

- 9 -

RLF1 25010515v.1

WHEREAS, Defendants are entering into this Stipulation solely because the Settlement will eliminate the burden, expense, distraction, and uncertainties inherent in further litigation;

WHEREAS, Robert J. Cresci passed away during the pendency of the Action and the Federal Actions, and Mary Beth Cresci in her capacity as executor of Mr. Cresci's estate is hereby added as a defendant in the Action solely for purposes of this Stipulation and the Settlement, and the Federal Plaintiffs agree to add Mary Beth Cresci in her capacity as executor of Mr. Cresci's estate as a defendant in the Federal Actions solely for purposes of dismissing the Overlapping Claims as part of this Settlement;

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, in consideration of the benefits set forth below, and subject to the approval of the Court pursuant to Court of Chancery Rule 23.1, that the Action and the Released Claims (as defined below) shall be compromised, settled, released, and dismissed with prejudice on the merits and without costs (except as provided below), subject to the following terms and conditions:

## DEFINITIONS

1.          The following terms shall have the meanings assigned to them herein:

          (a)     "Advisory Committee" shall mean the Advisory Committee of the Fund.

          (b)     "Capital Commitment" shall have the meaning set forth in the Partnership Agreement.

          (c)     "Claims" shall mean all manner of claims, demands, damages, rights, liabilities, defaults, promises, obligations, duties, losses, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, liens, obligations, contracts, defenses, actions, potential actions, proceedings, causes of action, suits, agreements, judgments, decrees, matters, issues, and/or controversies of whatever kind, nature, or description, whether based on state, local, foreign, or federal law or rule, whether contractual, extra-contractual, statutory, regulatory, in common law, or otherwise, whether suspected or unsuspected, whether known or unknown, including Unknown Claims, whether fixed or contingent, whether liquidated or not liquidated, whether disclosed or undisclosed, whether accrued or unaccrued, whether apparent or not apparent, whether matured or not matured, whether foreseen or unforeseen, whether now existing or hereafter ensuing.

          (d)     "Company Releasors" shall mean each of J2 and J2's direct and/or indirect parents, assigns, subsidiaries, affiliates, predecessors and/or

successors, and the past and present stockholders, partners, employees, officers, directors, members, managers, representatives and/or agents of any of them.

(e)    "Company Stockholders" shall refer to each and every J2 common stockholder who holds of record or beneficially owns as of the date that the Stipulation is filed with the Court.

(f)    "Defendant Released Parties" shall mean each of the Defendants and all current and past members of the Company's Board of Directors, their respective direct and/or indirect parents, assigns, subsidiaries, affiliates, predecessors and/or successors, and the past and/or present stockholders, partners, employees, officers, directors, members, managers, representatives, financial and legal advisors, and/or agents of any of them.

(g)    "Defendant Releasors" shall mean each of Richard Ressler, Douglas Y. Bech, Robert J. Cresci, Sarah Fay, W. Brian Kretzmer, Jonathan F. Miller, Stephen Ross, Hemi Zucker, Vivek Shah, the Fund, the General Partner, and the Management Company.

(h)    "Defendants' Released Claims" shall mean all Claims that may legally be waived by private agreement that are based upon or arise out of the prosecution of the Action and Overlapping Claims, except for claims relating to the enforcement of the Settlement.  For avoidance of doubt, Defendants' Released Claims do not include claims for any conduct postdating this Stipulation.

(i)    "Settlement Date" shall be the later of the date on which (1) the Court has entered the Judgment and (2) the claims related to the Company's investment in the Fund have been dismissed with prejudice in the Federal Action pursuant to the Stipulated Order (as defined below).

(j)    "Final Court Approval" shall mean (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the Judgment; or (ii) if there is an appeal from the Judgment, the date of (a) final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise to review the Judgment, or (b) the date the Judgment is finally affirmed on appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment, and, if certiorari or other form of review is granted, the date of final affirmance of the Judgment after such review.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees or expenses shall not in any way delay Final Court Approval

(k)    "Fee Date" shall have the meaning set forth in the Partnership Agreement.

(l)    "Foreign Entities" shall have the meaning set forth in the Partnership Agreement.

(m)   "Judgment" shall mean the judgment in the form attached as Exhibit B.

(n)   "Management Fee" shall have the meaning set forth in the Partnership Agreement.

(o)   "Partners" shall have the meaning set forth in the Partnership Agreement.

(p)   "Partnership Agreement" shall mean the Second Amended and Restated Limited Partnership Agreement, dated as of January 19, 2018, of the Fund.

(q)   "Partnership Expenses" shall have the meaning set forth in the Partnership Agreement.

(r)   "Management Fee Percentage" shall have the meaning set forth in the Partnership Agreement

(s)   "Plaintiff Released Parties" shall mean each of J2, Plaintiffs, Federal Plaintiffs and the Company Stockholders other than the Individual Defendants, and each of their respective parents, subsidiaries, affiliates, and controlling persons, and any current or former officer or director of any of the foregoing, and each of their respective heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, divisions,

47973036.1

RLF1 25010515v.1

affiliates, associated entities, stockholders, principals, officers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, attorneys (including all Plaintiffs' counsel in this Action and all Federal Plaintiffs' counsel in the Federal Action), personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates.

(t)    "Plaintiff Releasors" shall mean each of the Plaintiffs, Federal Plaintiffs, the Company on behalf of the Company Releasors, and the Company Stockholders, and each of their respective direct and/or indirect parents, assigns, subsidiaries, affiliates, predecessors and/or successors, and the past and present stockholders, partners, employees, officers, directors, members, managers, representatives and/or agents of any of them.

(u)    "Principals" shall mean each of the principals of each of the OCV Defendants and the Company.

(v)    "Proposed Amendment" shall mean Amendment No. 1 to the Partnership Agreement, attached hereto as Exhibit A.

(w)    "Plaintiffs' Released Claims" shall mean any and all Claims that any of the Company Releasors and/or Plaintiff Releasors may have that may legally be waived by private agreement that relate in any way to the Company's decision to invest in the Fund and/or the Company's investment in the Fund and/or any related

business relationships between the Company, on the one hand, and one or more of the OCV Defendants, on the other hand (including without limitation any such Claims against any of the Defendant Released Parties based on or relating to any acts or omissions undertaken by any such Defendant Released Party in his capacity as an officer or director of the Company), including without limitation any Claims against any of the Defendant Released Parties that are related in any way to (i) the Company's decision to invest in the Fund; (ii) the terms of the Company's investment in the Fund; (iii) the activities of the Fund and/or operation of the Fund by the General Partner and/or the Management Company; (iv) any matters that were alleged or that could have been alleged in the Action; (v) any matters related to the Company's investment in the Fund that were alleged or that could have been alleged in the Federal Actions; (vi) any disclosures and/or communications concerning any such matters referred to in the foregoing clauses (i) through (v) (except that this release does not have the effect of releasing the direct claims of purchasers of publicly traded securities of the Company that have been asserted under the Securities Exchange Act of 1934 in *Garcia v. J2 Global, Inc., et al.*, C.D. Cal., No. 2:20-cv-06096-SB-MAA in the United States District Court for the Central District of California); and/or (vii) the Action and/or the settlement thereof, including this Stipulation, in each case from the beginning of time through the Settlement Date.

(x)    The "Released Claims" shall mean, collectively, Plaintiffs' Released Claims and Defendants' Released Claims.  For avoidance of doubt, the Released Claims do not include any rights or claims that the Defendants may have against their insurer(s).

(y)    "Successor Fund" shall have the meaning set forth in the Partnership Agreement.

(z)    "Unknown Claims" shall mean claims that the Plaintiff Releasors did not know or suspect to exist at the time of the release, which, if known, might have affected the decision to enter into this Stipulation.

## SETTLEMENT CONSIDERATION

2.    Immediately following the Settlement Date, the OCV Defendants and the Company shall enter into the Proposed Amendment.

3.    For the avoidance of doubt, by entering into the Proposed Amendment, the Settling Parties agree to be bound by the following terms, which are set forth in the Proposed Amendment and include:

(a)    Notwithstanding anything in Section 4.2(a) or Section 4.2(d)(i) of the Partnership Agreement to the contrary (but for the avoidance of doubt without limiting the Company's obligations under Section 4.2(d)(ii) of the Partnership Agreement), effective as of the Settlement Date, (i) each Partner's Capital Commitment shall be reduced to the amount of such Partner's aggregate capital

contributions to the Fund actually funded as of the date hereof, and (ii) the General Partner shall not issue any new capital calls, and the Partners shall have no further obligations to make capital contributions to the Fund.    Notwithstanding the foregoing, the Settling Parties agree that notwithstanding the investment restriction set forth in paragraph 8.4(i) of the Partnership Agreement and the reduction in Capital Commitments set forth in clause (i) of the preceding sentence, the Fund will be permitted to invest up to $16 million in Foreign Entities.    For the avoidance of doubt, (x) compliance with paragraphs 8.4(a), 8.4(d), 8.4(e), 8.4(f) and 8.4(i) of the Partnership Agreement shall continue to be determined on a cost basis at the time of investment and shall not be affected by any events subsequent to the time of such investment, including with respect to any investments made prior to the date hereof, the reduction in Capital Commitments set forth in clause (i) of the first sentence of this Section 3(a) and (y) any and all Partnership Expenses and other fees and expenses (including Management Fees calculated in accordance with Section 2 of the Proposed Amendment) to be borne by the Fund under the Partnership Agreement shall continue to be borne by the Fund to the extent not historically borne by the Management Company or the General Partner, and funded out of investment proceeds and other amounts of cash on hand at the Fund;

(b)    If the Settlement Date occurs in 2021, (i) the Management Fee for every Fee Date in 2021 on or after the Settlement Date shall be an amount equal

to the sum of the individual amounts calculated by multiplying each Partner's Management Fee Percentage by such Partner's aggregate capital contributions to the Fund actually funded as of the date hereof and (ii) the Management Fee Percentage for every Fee Date on or after December 31, 2021 shall be zero percent (0%) and, therefore, no additional Management Fees shall be payable by the Partners or the Fund with respect to any Fee Date after 2021, even if an invoice for a Fee Date after 2021 has already been delivered.

(c)     If the Settlement Date occurs after 2021, each Partner's Management Fee Percentage for every Fee Date on or after the Settlement Date shall be zero percent (0%) and, therefore, no additional Management Fees shall be payable by the Fund or the Partnership after the date hereof, even if an invoice for a future Fee Date has already been delivered;

(d)     Except as otherwise expressly provided in the Proposed Amendment, all of the terms and conditions of the Partnership Agreement are ratified and shall remain unchanged and continue in full force and effect;

(e)     The Proposed Amendment shall be governed by and construed in accordance with the laws of the State of Delaware as such laws would be applied to agreements among the residents of such state made and to be performed entirely within such state.

4.        Effective as of the Settlement Date, the Company shall no longer have the right to appoint a representative on the Advisory Committee of the Fund and the Company's current representative on the Advisory Committee shall be automatically removed from such role as of the Settlement Date.

5.        For the avoidance of doubt, following the Settlement Date, the Company shall retain its interest in the Fund's portfolio companies existing as of the Settlement Date and that interest shall not be diluted by any capital contributions from other Partners after such date.

6.        Effective as of the Settlement Date, any transactions between the Company, on the one hand, and Richard Ressler and/or any of his affiliates, on the other hand, shall require the approval of an independent and disinterested special committee of the Company's Board of Directors.

## **RELEASE OF CLAIMS**

7.        Upon the Settlement Date, the Plaintiff Releasors and the Company Releasors shall be deemed to have, and by operation of the Judgment approving this Settlement shall have, completely, fully, finally, and forever discharged, dismissed with prejudice on the merits, released and settled, to the fullest extent permitted by law, the Plaintiffs' Released Claims against the Defendant Released Parties.

8.        Upon the Settlement Date, the Defendant Releasors shall be deemed to have, and by operation of the Judgment (as defined below) approving this Settlement

shall have, completely, fully, finally, and forever discharged, dismissed with prejudice on the merits, released and settled, to the fullest extent permitted by law, the Defendants' Released Claims against the Plaintiff Released Parties.

9.      Within two (2) business days of the date that the Court enters the Judgment, the Federal Plaintiffs and Defendants shall file a stipulation and proposed order in the District Court, in the form attached hereto as Exhibit E (the "Stipulated Order"), dismissing the Overlapping Claims.

## SUCCESSOR FUND

10.     The Settling Parties confirm and agree, for the avoidance of doubt, that the Principals may form and pursue a Successor Fund at any time.  Pursuant to paragraph 6 of this Stipulation, however, the Company's participation in the formation or pursuit of such a Successor Fund must be approved by an independent and disinterested special committee of the Company's Board of Directors.

## OPERATIONS PENDING THE SETTLEMENT DATE

11.     Notwithstanding anything in paragraph 4.2(a) or paragraph 4.2(d)(i) of the Partnership Agreement to the contrary (but for the avoidance of doubt without limiting the Company's obligations under paragraph 4.2(d)(ii) of the Partnership Agreement and assuming, for this purpose, that each Partner's entire Capital Commitment has already been funded), from and after July 12, 2021 until the Settlement Date (or until such earlier date upon which the Settlement is terminated

in accordance with paragraph 14 of this Stipulation), the General Partner and the Fund shall only be permitted to issue new capital calls to the Company and the other Partners for two reasons: (1) to pay for regularly scheduled Management Fees and (2) to pay for up to $5 million in the aggregate in follow-on investments (debt or equity) in the Fund's existing Portfolio Companies in which the Fund already owns equity.

## OTHER INVESTMENT VEHICLES

12.         The Company acknowledges and agrees that from and after July 12, 2021, the General Partner and its Affiliates intend to manage other investment vehicles that are likely to make investments that are similar to those that have been made for the Partnership during its term or are otherwise suitable for investment by the Partnership or within the Partnership's investment criteria. Notwithstanding anything to the contrary in the Partnership Agreement (including without limitation paragraph 8.3 thereof), the Company shall not, by reason of being a limited partner of the Partnership, have any right to object to, or participate in any manner in any profits or income earned or derived by or accruing to the General Partner or its Affiliates from the conduct of any investment activity, or any transaction by the General Partner or its Affiliates, for the account of any investment vehicle other than the Partnership after July 12, 2021 (it being understood that nothing in this paragraph 12 shall be interpreted to grant the Company any right to object to, or participate in

any manner in any such profits or income from, the conduct of any such investment activity, or any transaction by the General Partner or its Affiliates, for the account of any investment vehicle other than the Partnership prior to the date first above written that the Company did not have prior to entering into this Letter Agreement), and shall hold harmless the General Partner and its Affiliates from any claim, liability or expense incurred by reason of any claim asserted by or on behalf of the Company arising out of or related to any activity or transaction permitted by this sentence.

## TERMINATION OF THE SETTLEMENT

13.     This Stipulation shall be terminated, and shall be null and void and of no force and effect, unless otherwise agreed to by the Settling Parties pursuant to the terms hereof, if any Settling Party exercises a right to terminate the Settlement pursuant to the terms of this Stipulation.

14.     Any of the Plaintiffs, Federal Plaintiffs, or the Defendants may terminate the Settlement by serving written notice, in the manner provided in the rules of the Court, on counsel of record for the other parties within thirty (30) days after (i) the Court denies the Parties' request to approve the Settlement and enter the Judgment; (ii) the Judgment is reversed on appeal; or (iii) despite reasonable best efforts of the Federal Plaintiffs and the Defendants, the District Court has refused to approve a stipulation substantially in the form of the Stipulated Order.  For the

avoidance of doubt, the Settling Parties agree that denial of the Attorneys' Fees and Expenses Application (as defined below), or reversal of an order approving that Application, shall not be deemed a denial of the motion to approve the Settlement or reversal of the Judgment.

15.        In the event that any final injunction, decision, order, judgment, determination, or decree is entered or issued by any court or governmental entity prior to the Settlement Date that would make consummation of the Settlement in accordance with the terms of this Stipulation unlawful or that would restrain, prevent, enjoin, or otherwise prohibit consummation of the Settlement, the Settling Parties each reserve the right to withdraw from and to terminate the Settlement.  In addition, in the event that any preliminary or temporary injunction, decision, order, determination, or decree (an "Interim Order") is entered or issued by any court or governmental entity prior to Final Court Approval (as defined below) of this Stipulation and the Settlement that would restrain, prevent, enjoin, or otherwise prohibit consummation of the Settlement, then, notwithstanding anything herein to the contrary, the Settling Parties shall have no obligation to consummate the Settlement unless and until such Interim Order expires or is terminated or modified in a manner such that consummation of the Settlement in accordance with the terms of this Stipulation would no longer be restrained, prevented, enjoined, or otherwise prohibited.

16.     If the Settlement is terminated, this Stipulation and the Settlement and the Proposed Amendment shall be null and void and of no effect, the Parties shall be restored to their litigation positions as they existed immediately prior to the execution of this Stipulation, and this Stipulation shall not be deemed to prejudice in any way the positions in the Action of any Party.  In such event, and consistent with the applicable evidentiary rules, neither this Stipulation nor any of its contents, nor the existence of this Stipulation, shall be admissible in evidence or shall be referred to for any purpose in the Action or in any other proceeding, except in connection with any claim for breach of this Stipulation or as otherwise specifically provided herein.

## SUBMISSION AND APPLICATION TO THE COURT

17.     As soon as practicable, the Plaintiffs' counsel shall submit this Stipulation together with its exhibits to the Court, and the Parties shall apply jointly for entry of an order (the "Scheduling Order"), substantially in the form attached hereto as Exhibit C, providing for, among other things: (i) approval of the form and content of the proposed Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear attached hereto as Exhibit D; and (ii) a date for the final settlement hearing (the "Settlement Hearing").  At the Settlement Hearing, the Parties shall jointly request that the Judgment be entered substantially in the form attached hereto as Exhibit B.

## NOTICE

18.      J2 shall be responsible for providing the Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear to the Company Stockholders, substantially in the form attached hereto as Exhibit D, in the form and manner directed by the Court (when approved by the Court, the "Notice"). J2 or its insurer(s) shall cause to be paid all costs and expenses incurred in providing the Notice, including any costs and expenses associated with any additional copies of the Notice requested by record holders of J2's common stock (whether for purpose of providing the Notice to beneficial owners or otherwise).

## INTERIM INJUNCTION

19.      Pending final determination of whether the Settlement should be approved, the Plaintiffs and the Company Stockholders will be barred and enjoined, to the maximum extent permitted under law, from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any of the Plaintiffs' Released Claims, either directly, representatively, derivatively, or in any other capacity, against the Defendant Released Parties, and all pending deadlines in any and all such actions shall be suspended.

## ATTORNEYS' FEES AND EXPENSES

20.         The Settling Parties did not discuss attorneys' fees before executing this Stipulation, and any award to the Plaintiffs' counsel for fees and expenses shall be determined by the Court.  After execution of this Stipulation, the Company and the Plaintiffs and the Plaintiffs' counsel will attempt to negotiate an award of reasonable attorneys' fees and expenses.  If the Company and the Plaintiffs and the Plaintiffs' counsel agree to the amount of an appropriate award, they will separately document that agreement, the Plaintiffs and the Plaintiffs' counsel shall then apply for an award up to that agreed amount (the "Attorneys' Fees and Expenses Application"), and the Company will not oppose the Attorneys' Fees and Expenses Application.  If the Company and the Plaintiffs and the Plaintiffs' counsel do not reach agreement as to the amount of an appropriate award, the Plaintiffs and the Plaintiffs' counsel reserve the right to make a petition to the Court for an award of reasonable attorneys' fees and expenses in connection with the Settlement, and the Company reserves all rights to oppose any such petition for attorneys' fees and expenses.  Any such attorneys' fees shall be borne entirely by the Company and/or its insurer(s), and not by any other Defendant.

21.         Any award of attorneys' fees and expenses approved by the Court shall be paid to Plaintiffs' counsel by or on behalf of the Company within fifteen (15)

days of the entry of Judgment approving the Settlement and such order becoming
final after exhaustion of all appeals or petitions for review.

22.        Counsel for Plaintiffs shall allocate the attorneys' fees amongst
themselves and counsel for Federal Plaintiffs in a manner they believe in good faith
to appropriately reflect counsel's contributions to the creation of the benefit achieved
by the Settlement. Federal Plaintiffs and their counsel shall not apply for, or accept,
any award of fees or expenses related to the Overlapping Claims in the Federal
Action or in any other court or proceeding.

23.        An award of attorneys' fees or expenses to the Plaintiffs or the
Plaintiffs' counsel is not a necessary term of the Settlement and shall not be a
condition of the Settlement. Neither the Plaintiffs nor the Plaintiffs' counsel may
cancel or terminate the Settlement based on the Court's or any appellate court's
ruling on attorneys' fees or expenses to the Plaintiffs.

24.        Except as provided in this Stipulation, the Defendants shall bear no
other expenses, costs, damages, or fees alleged or incurred by any of the Plaintiffs'
counsel, or by any of the Plaintiffs' and/or Federal Plaintiffs' attorneys, experts,
advisors, agents, or representatives in connection with the Action, the Released
Claims, or the Settlement. Except as provided in this Stipulation, the Plaintiffs and
Federal Plaintiffs shall bear no expenses, costs, damages, or fees alleged or incurred
by any Defendant, or by any of Defendant's attorneys, experts, advisors, agents or

representatives in connection with the Action, the Released Claims, or the Settlement.

## ENTIRE AGREEMENT

25.      This Stipulation and its exhibits constitute the entire agreement among the Settling Parties with respect to the subject matter hereof and supersede all written or oral communications, agreements, or understandings that may have existed prior to the execution of this Stipulation.  No representations, warranties, or statements of any nature whatsoever, whether written or oral, have been made to or relied upon by any Settling Party concerning this Stipulation or its exhibits, other than the representations, warranties, statements, and covenants expressly set forth in such documents.

## CONSTRUCTION

26.      This Stipulation shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Settling Party on the ground that the Settling Party or its counsel drafted this Stipulation.

27.      Headings have been inserted for convenience only and will not be used in determining the terms of this Stipulation.

## GOVERNING LAW; CONTINUING JURISDICTION

28.      This Stipulation shall be governed by and construed in accordance with the laws of the State of Delaware as such laws would be applied to agreements

among the residents of such state made and to be performed entirely within such state without regard to Delaware's principles governing choice of law. The Settling Parties irrevocably and unconditionally (i) consent to submit to the sole and exclusive jurisdiction of the Court for any litigation arising out of or relating in any way to this Stipulation or the Settlement (or if subject-matter jurisdiction is lacking, to the Complex Commercial Litigation Division of the Superior Court of the State of Delaware); (ii) agree that any dispute arising out of or relating in any way to this Stipulation or the Settlement shall not be litigated or otherwise pursued in any forum or venue other than any such court; (iii) waive any objection to the laying of venue of any such litigation in any such court; (iv) agree not to plead or claim in any such court that such litigation brought therein has been brought in any inconvenient forum; (v) agree that all issues and questions raised in such litigation, including issues and questions concerning the statute of limitations, shall be governed by the laws of the State of Delaware, as such laws would be applied to litigation arising from agreements among the residents of such state made and to be performed entirely within such state without regard to Delaware's principles governing choice of law or conflict of law; (vi) agree to service in any such litigation by email to their respective Delaware counsel listed on the signature blocks below and (vii) expressly waive any right to demand a jury trial as to any such dispute.

## AMENDMENTS

29.     This Stipulation may be modified or amended only by a writing, signed by the Settling Parties (or their duly authorized counsel), that refers specifically to this Stipulation.

## SETTLEMENT NOT AN ADMISSION

30.     The provisions contained in the Settlement and this Stipulation shall not be deemed a presumption, concession, or admission by any Settling Party to this Stipulation of any fault, liability, or wrongdoing, or any infirmity or weakness of any claim or defense, as to any facts or claims (including the Released Claims) that have been or might be alleged or asserted in the Action, or any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal, or administrative, for any purpose other than as permitted by applicable court rules and rules of evidence.

## BINDING EFFECT

31.     This Stipulation shall be binding upon and inure to the benefit of the Settling Parties hereto and their respective agents, executors, heirs, successors, and assigns.

## COUNTERPARTS

32.　　　　This Stipulation may be executed in multiple counterparts, each one of which shall be deemed an original and which, taken together, shall constitute one and the same agreement.  Any such counterpart, to the extent delivered by means of a facsimile machine or by .pdf, .tif, .gif, .jpg, or similar attachment to electronic mail, shall be treated in all manner and respects as an original executed counterpart.

## AUTHORITY

33.　　　　This Stipulation will be executed by counsel for each of the Settling Parties, each of whom represents and warrants that they have the authority from their client(s) to enter into this Stipulation and bind their clients hereto.

## OWNERSHIP OF SHARES; NON-ASSIGNMENT OF CLAIMS

34.　　　　Each of the Plaintiff and the Plaintiff-Intervenor represents and warrants that it has been a stockholder of J2 since September 25, 2017, continually to the present, that as of the date hereof it continues to hold stock in J2, and that it shall continue to hold such stock in J2 through the Settlement Date.  Each of the Plaintiff, Plaintiff-Intervenor and Federal Plaintiffs further represents that it has not assigned the claims asserted in the Action, or any of the Plaintiffs' Released Claims, to any person.

## NO WAIVER

35.         Any failure by any Settling Party to insist upon the strict performance by any other Settling Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist on the strict performance of any and all of the provisions of this Stipulation to be performed by such other Settling Party.  No waiver, express or implied, by any Settling Party of any breach or default in the performance by the other Settling Party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

## CONFIDENTIALITY

36.         The Settling Parties and their respective counsel agree, to the extent permitted by law, that all agreements made before and during the course of the Action relating to confidentiality of information shall survive this Stipulation.

**IN WITNESS WHEREOF**, the undersigned Settling Parties, by and through their respective counsel, have executed this Stipulation as of the date set forth above.

*[Signature page follows]*

| | |
|---|---|
| GRANT & EISENHOFER P.A. | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| */s/ Michael J. Barry* | */s/ R. Judson Scaggs, Jr.* |
| Michael J. Barry (#4368) | R. Judson Scaggs, Jr. (#2676) |
| John C. Kairis (#2752) | Susan W. Waesco (#4476) |
| 123 Justison Street | Daniel T. Menken (#6309) |
| Wilmington, DE 19801 | Michael J. Slobom, Jr (#6726) |
| *Counsel for Plaintiff International Union of Operating Engineers of Eastern Pennsylvania and Delaware* | 1201 N. Market Street, 16th Floor |
| | Wilmington, DE 19801 |
| | *Counsel for Defendants Douglas Y. Bech, Robert J. Cresci, Sarah Fay, W. Brian Kretzmer, Jonathan F. Miller, Stephen Ross, Vivek Shah and Nominal Defendant J2 Global, Inc.* |
| | |
| SAXENA WHITE P.A. | RICHARDS, LAYTON & FINGER, P.A. |
| | |
| */s/ Thomas Curry* | */s/ Raymond J. DiCamillo* |
| Thomas Curry (#5877) | Raymond J. DiCamillo (#3188) |
| 1000 N. West Street | Matthew D. Perri (#6066) |
| Suite 1200, Office 1265 | 920 North King Street |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| *Counsel for Proposed Intervenor Orlando Police Pension Fund* | *Counsel for Defendants Richard Ressler, Hemi Zucker, OCV Fund I, LP, OCV I GP, LLC, and OCV Management LLC* |
| | |
| THE BROWN LAW FIRM, P.C. | |
| | |
| */s/ Timothy Brown* | |
| Timothy Brown | |
| 767 Third Avenue, Suite 2501 | |
| New York, NY 10017 | |

47973036.1

RLF1 25010515v.1

THE ROSEN LAW FIRM, P.A.
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016

FARNAN LLP
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801

    *Counsel for Federal Plaintiff*
    *Danning Huang*

HYNES & HERNANDEZ, LLC

*/s/ Ligaya T. Hernandez*
Michael J. Hynes
Ligaya T. Hernandez
101 Lindenwood Drive, Suite 225
Malvern, PA 19355

BRAGAR EAGEL & SQUIRE, P.C.
Garam Choe
810 Seventh Avenue, Suite 620
New York, NY 10019

COOCH AND TAYLOR, P.A.
Blake A. Bennett (# 5133)
The Nemours Building
1007 N. Orange Street, Suite 1120
Wilmington, DE 19801

    *Counsel for Federal Plaintiff Fritz*
*Ringling*

July 29, 2021

47973036.1

       - 35 -

RLF1 25010515v.1