JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GARCIA,<br>Plaintiff,<br>v.<br><br>J2 GLOBAL, INC., et al.,<br>Defendants. | Case No. 2:20-cv-06096-FLA (MAAx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT [DKT. 62]** |

## RULING

Before the court is J2 Global, Inc. ("J2"), Vivek Shah ("Shah"), Nehemia Zucker ("Zucker"), and R. Scott Turicchi's ("Turicchi") (collectively, "Defendants") Motion to Dismiss Second Amended Consolidated Class Action Complaint ("Motion"). Dkt. 62 ("Mot."); Dkt. 62-1 ("Mot. Br."). Lead Plaintiff Jonathan Espy ("Espy" or "Plaintiff") opposes the Motion. Dkt. 64 ("Opp'n"). On October 4, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for October 8, 2021. Dkt. 70; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated below, the court GRANTS the Motion without leave to amend.

**BACKGROUND**

The relevant background of this action is set forth in the court's Order Granting Defendants' Motion to Dismiss filed March 5, 2021 ("Order"). Dkt. 56. In short, this is a putative class action lawsuit against J2 and its executives for violation of Sections 10(b) and 20(a) of the Securities Exchange Act. In his First Amended Complaint ("FAC") filed November 19, 2020, Plaintiff alleged that J2 and its executives misled investors on four subjects: (1) the independence of the Board of Directors; (2) two related-party transactions (the acquisition of VDW and OCV investment); (3) accounting practices, including J2's use of consolidated accounting and its lack of goodwill impairments; and (4) employee van der Weijden's compensation package and Australian investments on which he allegedly worked (Web24 and AUSweb). *See* Dkt. 42.

On March 5, 2021, the court dismissed the FAC with leave to amend, holding Plaintiff did not adequately plead scienter for any of the Defendants. Order 24-27. The court further ruled Plaintiff did not adequately plead falsity regarding director independence, J2's goodwill accounting, and van der Weijden's compensation and the Australian investments.[1] Order 17-23.

Plaintiff filed his Second Amended Consolidated Class Action Complaint ("SAC") on April 19, 2021, adding statements by former employees and allegations regarding Defendants' scienter. Dkt. 59 at ¶¶ 48-68, 247-266. The SAC also removes allegations regarding J2's goodwill accounting and the independence of the Board of Directors. *See, e.g.*, SAC ¶ 17. Plaintiff maintains that throughout the putative class period, J2 misled investors in various SEC filings, press releases, and other public

---

[1] The court, however, found Plaintiff adequately pled falsity as to (1) the two alleged related-party transactions, and (2) J2's use of consolidated accounting. Order 17-18, 20-21.

filings when it "failed to disclose that: (i) J2 has been engaging in a secret pattern of enriching corporate insiders, including Defendant Zucker, through its acquisitions, of which approximately 73% were sourced and handled by a corporate insider whose only incentive was the number of deals – not their quality or suitability; [and] (ii) J2 has been hiding unsuccessful acquisitions by not breaking out the financials of acquired companies within its consolidated financial statements, thereby … mislead[ing] investors about the strength of its acquisition system." *Id.* ¶¶ 17, 32. According to Plaintiff, "Defendants should have made additional disclosures about the VDW Acquisition and the [OCV] Investment as related party transactions and the underperformance of J2 [acquisitions] because such information would have had an impact on the decision making of J2 investors." *Id.* ¶ 119.

Defendants again move to dismiss Plaintiff's operative complaint. *See generally* Mot.[2]

## DISCUSSION

### I. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the

---

[2] The parties request the court take judicial notice of or consider certain documents incorporated by reference into the SAC. Dkts. 62-2, 65. As the court does not rely on these documents to issue its ruling, the requests are DENIED as moot.

plaintiff." *Caltex*, 824 F.3d at 1159. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (internal citations omitted). Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Securities fraud claims must also meet a higher pleading standard. It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must … satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Fed. R. Civ. P. 9(b) "requires particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading ... about the statement and why the statements were false or misleading at the time they were made." *Id.* The PSLRA also requires "plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." *Id.*

When ruling on a Rule 12(b)(6) motion to dismiss a Section 10(b) action, "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Count I: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 (Against All Defendants)

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). One of the rules promulgated under the Act is SEC Rule 10b-5, which makes it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5(b).

The "elements that must be pleaded to state a claim for securities fraud are strenuous but well established." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). To state a claim for violation of Section 10(b), a plaintiff must prove: (1) a material misrepresentation or omission by the defendant (i.e., falsity); (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

Here, Defendants argue Plaintiff does not adequately allege scienter as to all Defendants, or adequately allege falsity as to van der Weijden's compensation and J2's consolidated accounting method. *See generally* Mot. Br.

/ / /

### A. Scienter

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is "a mental state embracing intent to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 319 (internal citation omitted). A defendant acts with the required state of mind, or scienter, only if she makes false or misleading statements either "intentionally" or with "deliberate recklessness"; mere negligence is not actionable. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005).

Deliberate recklessness is defined as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (internal citation omitted). Further, a "strong inference" under 15 U.S.C. § 78u-4(b)(2)(A) "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

When analyzing the sufficiency of a plaintiff's scienter pleadings, if no individual allegation alone is sufficient to establish scienter, the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco*, 552 F.3d at 992 (9th Cir. 2009). At bottom, the court "must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Id.* at 991. Though not impossible, this "is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

As explained below, Plaintiff's allegations again fail to establish a strong inference of scienter.

*1. Allegations Standing Alone*

The court first considers whether any of Plaintiff's allegations, standing alone, are sufficient to establish scienter. Plaintiff argues the allegations of former employees ("FE") of J2 establish a strong inference of scienter for Defendants Zucker and Turicchi, since they show the two Defendants (1) knew, or were reckless as to the fact, that J2's consolidated accounting method concealed the performance of struggling acquisitions, and (2) acted recklessly when they failed to disclose additional facts about the VDW acquisition. Opp'n 9-11.

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Zucco*, 552 F.3d at 995 (internal citations omitted).

Here, the SAC adequately describes the title, tenure, and job responsibilities of four former J2 employees (FE1, FE2, FE3, and FE4), but it is questionable whether many of the former employees' allegations stem from personal knowledge. FE2, for example, was J2's former "Global Head of Human Resources," but comments on J2's accounting and acquisition strategy. SAC ¶¶ 56-62. Plaintiff argues FE2 has personal knowledge based on his or her "first-hand experience working 'directly with van der Weijden to conduct approximately 100 mergers and acquisitions," Opp'n 14, but Plaintiff does not explain how FE2 has sufficient knowledge to allege facts such as that "J2 did not conduct strong accounting due diligence." *See* SAC ¶ 57. This weighs against finding scienter as such topics are outside the usual scope of human resources. *See Zucco*, 552 F.3d at 996 (finding statement from human resources

employee who commented on the workings of the finance and corporate departments unreliable).

Moreover, Plaintiff's allegations continue to rely on hearsay rather than personal knowledge. For example, Plaintiff alleges the VP of International Marketing & GM, Tim McLean, informed FE1 that Defendant Zucker wanted van der Weijden to close deals regardless of whether they made good business sense. SAC ¶ 51. Such hearsay is impermissible to establish scienter. *See Zucco*, 552 F.3d at 997 (noting that "the confidential witnesses base their knowledge on vague hearsay, which is not enough to satisfy [the Ninth Circuit's] reliability standard."). Further, FE4 was only employed by J2 until mid-2015, which is before any alleged misstatements were made. SAC ¶ 66; *see also id.* Appendix C (first alleged misstatement made on October 5, 2015). FE4's statements, thus, contribute little to an inference of scienter. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1061-62 (9th Cir. 2014) (holding that witnesses who left company before alleged problems did not support scienter inference).

Assuming *arguendo* that Plaintiff adequately alleged the former employees' reliability and personal knowledge, Plaintiff also fails to show how the employees' statements are indicative of Defendants' scienter. None appear to speak to Defendants' mental state, and many of the former employees' allegations simply amount to negative opinions about J2's business practice or incentive structures. *See, e.g.*, SAC ¶¶ 52, 57, 65 ("In FE1's opinion, J2 was 'atrocious' about buying businesses and not integrating them at the global level"; FE2 believed "J2 did not conduct strong accounting due diligence"; FE3 believed "there were many missed opportunities for J2 to reinvest in and grow certain of its acquired businesses"). This is not indicative of whether Defendants acted with malicious intent or deliberate recklessness when J2 relied on consolidated accounting methods or failed to disclose additional information about the VDW acquisition. *See In re Downey Sec. Litig.*, No. 2:08-cv-3261-JFW (RZx), 2009 WL 2767670, at *11 (C.D. Cal. Aug. 21, 2009)

("[T]he second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud.").

In sum, while the SAC's allegations by former employees may provide insight into J2's business practices, they do not shed light on Defendants' mental state as required to establish scienter. The former employees do not allege any facts to show Defendants Zucker and Turicchi made any false or misleading statements either "intentionally" or with "deliberate recklessness," as is required. *See In re Daou*, 411 F.3d at 1022. Thus, standing alone, the former employees' statements fail to show a "cogent" and "compelling" inference of scienter. *See Tellabs*, 551 U.S. at 314.

**2. Core Operations Theory**

Plaintiff also attempts to rely on the "core operations" theory to establish scienter as to all individual Defendants, arguing that scienter is established because they each had access to information regarding J2's M&A strategy as a whole, the OCV investment, and Everyday Health acquisition. Opp'n 20.

A scienter theory that infers that facts critical to a business's "core operations" or an important transaction were known to a company's key officers rarely satisfies the PSLRA's heightened pleading standard, but can be "one relevant part of a complaint that raises a strong inference of scienter." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008); *see also id*. ("Allegations that rely on the core-operations inference are among the allegations that may be considered in the complete PSLRA analysis. The allegations, read as a whole, must raise an inference of scienter that is 'cogent and compelling, thus strong in light of other explanations,' [citation] to satisfy the PSLRA standard.").

The Ninth Circuit has explained:

> [A]llegations regarding management's role in a company may be relevant and help to satisfy the PSLRA scienter requirement in three circumstances. First, the allegations may be used in any form along with other allegations that, when read [as part of a holistic analysis], raise an inference of scienter that is "cogent and compelling, thus strong in light of other explanations." This view takes such allegations into

> account when evaluating all circumstances together. Second, such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information … . Finally, such allegations may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter.

*Id.* at 785-86.[3] Establishing scienter under the core operations theory "is not easy," and requires Plaintiff to "produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations … or witness accounts demonstrating that executives had actual involvement" in the alleged fraud. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).

Here, the SAC is vague regarding the precise information to which Defendants allegedly had access. To be sure, the SAC alleges Defendants Zucker and Turicchi[4] signed off on every acquisition, received a daily report with key metrics and sometimes responded to them with questions, and received weekly performance reports showing revenues and other data points. *E.g.*, SAC ¶¶ 50, 58, 61, 67. Plaintiff also cites several statements by Defendants that show they were involved in J2's acquisition strategy. *E.g.*, SAC ¶¶ 256-58. But the court agrees with Defendants that "being involved in J2's acquisitions does not imply that Defendants intended to defraud investors about them." Mot. Br. 14. Were the court to hold otherwise, companies could be exposed to liability simply because executives are informed about

---

[3] As the court considers the complaint holistically below, *see* Part II(A)(3), the court considers here whether (1) the allegations in the SAC independently satisfy the PLSRA because they are particular and suggest Defendants had actual access to disputed information, or (2) the relevant facts were of such prominence that it would be "absurd" to suggest management was without knowledge of the matter.

[4] As with the former Complaint, the SAC contains few allegations regarding Defendant Shah specifically.

their businesses. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud"); *Zucco*, 552 F.3d at 1000 (finding allegations that senior management "closely reviewed accounting numbers generated … each quarter" and "top executives had several meetings in which they discussed quarterly inventory numbers" insufficient to establish scienter). In short, Plaintiff fails to offer particularized facts as he points to no specific piece of information that Defendants allegedly knew but intentionally or with deliberate recklessness failed to disclose to mislead investors.

Second, Plaintiff also fails to plead facts showing this is one of the "rare circumstances" where scienter is established because the nature of "relevant fact[s] is of such prominence that it would be 'absurd' to suggest" Defendants were without knowledge of the matter. *See S. Ferry*, 542 F.3d at 785-86. Although the $200 million OCV investment was sizeable, the transaction was undisputedly disclosed to the public, negating the inference of scienter. *See* SAC ¶ 199 (J2's 2017 Proxy Statement explaining J2 invested $200 million in OCV, J2 would pay management fees yearly to OCV, and that Defendant Zucker was a co-managing principal of OCV and a significant equity holder); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1132 (E.D. Wash. 2013) ("The fact that Defendants disclosed the adverse information publicly negates an inference of scienter … .").

Although Plaintiff contends Defendants should have also disclosed the magnitude of the management fees J2 paid to OCV, Plaintiff fails to allege Defendants were aware of this information. In all, "these misrepresentations are not the type that qualifies for the narrow exception to the general rule that falsity alone cannot create a strong inference of scienter." *Zucco*, 552 F.3d at 1001. These allegations are alone insufficient to establish scienter and, at most, must be joined by other allegations

which, read as a whole, raise an inference of scienter that is "cogent and compelling, thus strong in light of other explanations." *See South Ferry*, 542 F.3d at 784.

**3. Holistic Review**

Plaintiff argues that "holistic analysis confirms that Defendants Shah, Zucker, and Turicchi each acted with at least recklessness when misleading investors about the success and strength of J2's acquisition strategy, the VDW acquisition, and the OCV transaction." Opp'n 22. Defendants, in turn, argue they "reasonably believed J2 had more than adequately disclosed the OCV Investment and VDW Acquisition and had no obligation to disclose van der Weijden's compensation or granular details on individual acquisitions, particularly where applicable SEC rules did not require it and the company's external auditor signed off on the financial statements." Mot. Br. 19.

The court finds the allegations in the SAC, read as a whole, do not support a strong inference of scienter for any of the individual Defendants. An action for securities fraud requires a showing of not just recklessness, but <u>deliberate</u> recklessness. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) ("facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, [but] they are not sufficient to establish a *strong* inference of deliberate recklessness") (emphasis in original) (superseded by statute on other grounds). That Defendants signed off on acquisitions, received reports with key performance metrics, attended meetings to discuss them, and publicly commented on J2's acquisitions do not amount to deliberate recklessness.

Moreover, it is undisputed that (1) J2 disclosed it had acquired VDW; (2) J2 disclosed it invested $200 million in OCV and that J2 was paying OCV management fees, for which Defendant Zucker stood to benefit; and (3) J2 conformed with generally accepted accounting principles ("GAAP") by using consolidated accounting in its financials. *See* SAC ¶¶ 120, 199; Dkt. 43-1 at 15. Plaintiff's scienter allegations would be stronger had Defendants failed to make any disclosures regarding the VDW

acquisition or OCV investment,[5] or if J2's accounting methods violated GAAP practices. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706-07 (9th Cir. 2021) (finding a strong inference of scienter where defendant's failure to disclose known security problems with Google+ social network in its 10-Q statements established a strong inference defendant hoped to avoid public criticism and loss of consumer confidence, and thus, a strong inference of scienter); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004) (finding specific admissions from top executives that they were involved in every detail of the company and monitored data, combined with improper accounting reports, favored an inference of scienter); *Daou*, 411 F.3d at 1024 (finding scienter given the specific allegations of deliberate accounting malfeasance, but noting plaintiffs' "allegations of [defendant's] top-to-bottom management hierarchy, … suspicious stock sales, or the corporate acquisitions alone would not likely demonstrate … scienter").

In sum, the court agrees with Defendants that the inference of deliberate recklessness is not at least as strong as the opposing inference of innocence, and that Defendants believed J2's disclosures were sufficient. *See* Mot. Br. 19. Assuming *arguendo* that Defendants made misleading statements or omissions, the allegations in the SAC amount to, at most, questionable business practices or negligence on behalf of Defendants. This is not sufficient *mens rea* to sustain an action for securities fraud.

**4. Corporate Scienter**

Finally, Plaintiff argues that even if the court does not find scienter as to any of the individual Defendants, Plaintiff's allegations establish corporate scienter as to J2. Opp'n 25. "[I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 2020 WL 6270482, at *8 (E.D. Va.

---

[5] Federal securities laws, however, "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

Oct. 26, 2020) (citation omitted). The Ninth Circuit "has not [explicitly] adopted the corporate scienter doctrine," *Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020), but has suggested a corporate scienter inference "might be appropriate … [where] a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication," *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (emphasis and citation omitted).

Here, Plaintiff largely proceeds on an omission theory of fraud, arguing that certain disclosures were not as detailed as they should have been. Plaintiff has not alleged a dramatic falsehood that would warrant the application of the corporate scienter doctrine. The court, therefore, finds the corporate scienter doctrine does not apply here.

**B. Conclusion Regarding Count I**

As Plaintiff fails to adequately plead scienter as to all Defendants, the court GRANTS Defendants' Motion and dismisses Count I without leave to amend. Having granted the Motion on this basis, the court need not reach Defendants' argument that Plaintiff has not properly pleaded falsity as to van der Weijden's compensation and J2's consolidated accounting method.

**III. Count II: Violations of Section 20(a) of the Exchange Act (Against the Individual Defendants)**

Lastly, Plaintiff's claim under Section 20(a) of the Exchange Act requires an underlying Section 10(b) violation. Because Plaintiff fails to plead scienter to support a claim under Section 10(b), the Section 20(a) claim also fails. *See Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily … if a plaintiff fails to adequately plead a primary violation of section 10(b).").

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons stated above, the court GRANTS Defendants' Motion to Dismiss Second Amended Consolidated Class Action Complaint (Dkt. 62) without leave to amend.

IT IS SO ORDERED.

Dated: August 8, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge